Mayagüez Sugar Company, Inc., peticionaria, *v.* Tribunal de Apelación de Contribuciones de Puerto Rico, etc., demandado; Rafael Buscaglia Tesorero de Puerto Rico, interventor.

Núm. 1286.—*Sometido:* Julio 9, 1942. *Resuelto:* Julio 23, 1942.

*J. J. Ortiz Alibrán,* abogado de la peticionaria; *Hon. Procurador General George A. Malcolm, M. Rodríguez Ramos, Procurador General Auxiliar y Eulogio Riera, Subprocurador Auxiliar,* abogados del interventor:

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Al rendir su planilla de ingresos correspondiente al año que terminó el 30 de junio de 1935, la Mayagüez Sugar Co., Inc. declaró un ingreso bruto ascendente a $571,145.39 y

$628,478.70 como gastos totales o deducciones, arrojando una pérdida neta de $57,333.31. Por tanto la corporación no pagó contribución sobre ingresos para dicho año fiscal.

Practicada una investigación, el 13 de enero de 1938 el Tesorero notificó a la corporación una deficiencia ascendente a $13,807.26. La notificación del Tesorero manifestaba que, de acuerdo con su investigación, la corporación había obtenido un ingreso neto de $67,147.78 durante el año en cuestión. La cantidad impuesta se liquidaba de la siguiente manera:

| | |
|---|---|
| 12½ por ciento sobre $67,147.78_____ | $8, 393. 47 |
| Intereses al 6 por ciento_____ | 1, 217. 05 |
| Penalidad de 50 por ciento sobre $8,393.47 si hubo fraude para evadir la contribución_____ | 4, 196. 74 |
| | $13, 807. 26 |

El 11 de febrero de 1938, la corporación interpuso recurso de alzada para ante la Junta de Revisión e Igualamiento. La Junta celebró una visita el 2 de octubre de 1940. Mientras el caso estaba pendiente de resolución, se aprobó la Ley Núm. 172, Leyes de Puerto Rico, 1941 (pág. 1039). De acuerdo con la sección 11 de esa ley, el expediente del presente caso fué entregado al Tribunal de Apelación de Contribuciones. El 6 de marzo de 1942, sin haber llevado a cabo ningún otro procedimiento, el Tribunal de Apelación de Contribuciones decidió que la contribuyente era responsable por la mencionada suma de $13,807.26. Expedimos el auto de *certiorari* solicitado por la corporación.

■ Nos confrontamos inicialmente con la contención del Procurador General de que carecemos de jurisdicción para considerar el presente caso. La posición adoptada por el Procurador General es que la apelación ordinaria es el único remedio en este caso, y que el auto de certiorari aquí expedido debe, por tanto, ser anulado.

La sección 76(*a*) de la Ley de Contribuciones sobre Ingresos disponía un procedimiento detallado para litigar en

casos de deficiencias. Dijimos en el caso de *P. R. Fertilizer Co.* v. *Domenech, Tes.,* 50 D.P.R. 405, 417, que el procedimiento así establecido en esa ley "debe prevalecer sobre la ley general sobre pleitos en casos de contribuciones pagadas bajo protesta, . . .".

Posteriormente, se aprobó la Ley Núm. 172, Leyes de Puerto Rico, 1941, creando el Tribunal de Apelación de Contribuciones. Por lo tanto se hizo necesario enmendar las secciones de la Ley de Contribuciones sobre Ingresos referentes a deficiencias, en tanto en cuanto disponían que se recurriera a las cortes ordinarias en vez de al Tribunal de Apelación de Contribuciones. Esto fué hecho a través de la Ley Núm. 23 de la Sesión Especial de 1941 (pág. 73). La sección 9 de la Ley Núm. 23 lee en parte como sigue:

"Sección 9.—Que la sección 76 de la referida Ley Núm. 74 de 6 de agosto de 1925, queda por la presente enmendada de modo que la misma lea como sigue:

" 'Sección 76.—(*a*) Cuando un contribuyente no estuviere conforme con la deficiencia o parte de la deficiencia determinada por el Tribunal de Apelación de Contribuciones de Puerto Rico de acuerdo con la sección 57(*b*) de esta Ley, estará, no obstante, obligado a pagarla totalmente, y si deseare apelar para ante la Corte Suprema de Puerto Rico en la forma dispuesta por ley, al efectuar el pago protestará la parte de la deficiencia con la cual no estuviere conforme y pedirá al colector o funcionario recaudador que consigne su protesta al dorso del recibo de pago, indicando específicamente la parte de la contribución que se paga bajo protesta, y tal recibo o copia certificada del mismo deberán formar parte de su escrito de apelación para ante la Corte Suprema, requisito sin el cual no tendrá jurisdicción dicha corte.' "

La sección 5 de la Ley Núm. 172, creando el Tribunal de Apelación de Contribuciones, al referirse a las decisiones de ese tribunal, lee en parte como sigue:

". . . Estas decisiones tendrán el carácter de finales; pero la parte perjudicada podrá dentro de los treinta (30) días después de haberse rendido la decisión apelar de la misma para ante el Tribunal Supremo de Puerto Rico, mediante una solicitud de *certiorari* para

revisar los procedimientos. El Tribunal Supremo de Puerto Rico tendrá jurisdicción competente para esta revisión, fundándose exclusivamente en los autos, . . .''

El Procurador General aparentemente concede que todas las decisiones del Tribunal de Apelación de Contribuciones son revisables por esta corte a virtud del certiorari de naturaleza especial provisto en la sección 5 de la Ley Núm. 172, con la excepción de decisiones en que están envueltas deficiencias. El Procurador General alega que en este último caso el contribuyente debe proceder como si estuviera tramitando una apelación ordinaria de una corte de distrito para ante esta corte.

El razonamiento empleado por el Procurador General es el siguiente: La sección 9 de la Ley Núm. 23 provee que después de una decisión del Tribunal de Apelación de Contribuciones, ''si deseare [el contribuyente] apelar para ante la Corte Suprema de Puerto Rico en la forma dispuesta por ley,'' el contribuyente debe dar ciertos pasos. Bajo la doctrina del caso de *P. R. Fertilizer* debemos limitarnos a la Ley de Contribuciones sobre Ingresos para determinar el procedimiento a seguir al invocar la jurisdicción de las cortes. Para ''apelar'' ante esta corte ''en la forma dispuesta por ley'', necesariamente tiene, por tanto, que procederse de igual manera como si el caso hubiera sido resuelto por una corte de distrito, en vez de tramitar el certiorari de naturaleza especial provisto en la Ley creando el Tribunal de Apelación de Contribuciones.

La dificultad con la posición adoptada por el Procurador General es que ya no nos confrontamos con una situación en la cual esta corte, al ejercitar su jurisdicción apelativa ordinaria, está revisando sentencias de una corte inferior. Tampoco es ya la Ley de Contribuciones sobre Ingresos la única fuente de *todo* el procedimiento a seguir para obtener una revisión judicial de todas aquellas cuestiones que surgen

al amparo de ella. La Legislatura ha cambiado la situación en ambos aspectos. La Ley Núm. 172 creó una agencia administrativa con poderes cuasijudiciales para entender en cuestiones relacionadas con contribuciones sobre la propiedad, ingresos y herencia. A la corte de distrito se le quitó jurisdicción para decidir estos casos en primera instancia. En su lugar ha sido sustituído un tribunal centralizado que ha de especializarse exclusivamente en esos casos de contribuciones. La sección 4 de la Ley creando el Tribunal de Apelación de Contribuciones lee en parte como sigue:

"El Tribunal tendrá jurisdicción para revisar la tasación y retasación de la propiedad mueble e inmueble y conocerá de todas las reclamaciones que pudieran formularse ante él por personas interesadas, contra las resoluciones del Tesorero de Puerto Rico que afecten al impuesto y pago de contribución sobre la propiedad, de la contribución sobre ingresos, y de la contribución sobre trasmisión de bienes por herencia."

No puede negarse que la jurisdicción del Tribunal de Apelación de Contribuciones en cuanto a contribuciones sobre ingresos, propiedad y herencia, es amplia y comprensiva. Y el estatuto que lo crea *específicamente* dispone la revisión de sus decisiones a través de un certiorari de naturaleza especial. Nada de lo que dijimos en el caso de *P. R. Fertilizer* nos impide resolver ahora, particularmente en vista de que la situación ha cambiado como resultado de la legislación de 1941, que la revisión "en la forma dispuesta por ley"— que es el lenguaje usado en la enmienda de 1941 a la sección 76(*a*) de la Ley de Contribuciones sobre Ingresos—quiere decir en la forma dispuesta por la Ley creando el Tribunal de Apelación de Contribuciones. Por el contrario, esta frase en la enmendada Ley de Contribuciones sobre Ingresos por sí misma nos obliga a ir fuera de esa ley para determinar qué constituye apelación "en la forma dispuesta por *ley*", y por ende la teoría sobre la cual se decidió el caso de *P. R. Fertilizer*—que la Ley de Contribuciones sobre Ingresos es

una ley suficiente por sí misma en cuestiones de procedimiento—ya no tiene aplicación.

No hemos sido persuadidos por el argumento del Procurador General de que el uso de la frase "si deseare [el contribuyente] *apelar"*, que se encuentra en la referida enmienda del 1941 a la sección 76(*a*), demuestra que fué la intención de la Legislatura que en casos de deficiencias procedía una apelación ordinaria en lugar del certiorari de naturaleza especial provisto por la Ley creando el Tribunal de Apelación de Contribuciones. La palabra "apelación" con frecuencia se usa indistintamente (*loosely*) en nuestras leyes como sinónimo de revisión por algún organismo superior. Es usada indistintamente en esa forma tanto en la Ley de Contribuciones sobre Ingresos como en la Ley Núm. 172. Existen innumerables estatutos en esta jurisdicción en que la palabra "apelación" es usada para expresar el derecho de un individuo a radicar en las cortes una acción *original* con el fin de revocar o modificar una decisión *ejecutiva.* (Véase *General Motors Acceptance Corporation* v. *Brañuela et al.,* ante (pág. 696), resuelto el 13 de julio de 1942). La Ley Núm. 172 y los diversos estatutos contributivos, tal como han sido enmendados en la Sesión Extraordinaria de 1941, se refieren constantemente a "apelación" del Tesorero ante el Tribunal de Apelación de Contribuciones. Y el remedio provisto en la Ley Núm. 172 para que esta corte revise las decisiones del Tribunal de Apelación de Contribuciones es denominado "apelación . . . mediante una solicitud de *certiorari"*. En verdad, el nombre mismo, Tribunal de Apelación de Contribuciones (*Court of Tax Appeals*), empleado para describir un organismo que ni es una corte ni entiende en apelaciones en el sentido tradicional de la palabra, demuestra cuán falaz puede ser este argumento. El resolver que en este sitio específico de la sección 9 de la Ley Núm. 23, y en ningún otro, la Legislatura estaba usando la palabra "apelación" en el sentido legal, técnico y tradi-

cional sería atribuirle a la Legislatura una precisión de lenguaje que como se ha demostrado no ha ejercitado al usar esa palabra en éste y en otros estatutos pertinentes.

Cuando la Legislatura quiso mantener la jurisdicción en las cortes de distrito en otras clases de casos sobre contribuciones, incluyendo una apelación ordinaria para ante esta corte como una cuestión de derecho, así lo manifestó en lenguaje inequívoco. Véase la Ley Núm. 17, Leyes de Puerto Rico, 1941, Sesión Extraordinaria, que enmienda la ley que dispone el pago de contribuciones bajo protesta. Presumiblemente, la Legislatura en esa ocasión actuó movida por los hechos de que (a) la apelación como una cuestión de derecho, procede tradicionalmente de una corte de distrito a la Corte Suprema, y que (b) la revisión discrecional de las decisiones de un tribunal especializado, menos propenso a errar dentro de su esfera de acción que las cortes de distrito, las cuales no tienen especial competencia en la materia aquí envuelta, es suficiente salvaguardia para aquellas partes que se sientan agraviadas por sus decisiones.

Pero sobre todo, el argumento del Procurador General se desploma al llegar a la etapa crucial del examen de las consecuencias de la posición que él ha asumido. No se nos ha llamado la atención hacia ningún caso que resuelva que la apelación, en el sentido tradicional y técnico de revisión de una decisión de un tribunal inferior por una corte superior a él en la jerarquía judicial, procede de una decisión de una agencia administrativa para ante una corte de apelaciones. La Legislatura pudo, desde luego, disponer que las decisiones de tal agencia serían revisadas por nosotros de la misma manera como si la parte agraviada estuviere tramitando una apelación de una corte inferior a una corte de apelaciones. Pero hasta que la Legislatura así lo disponga, no podemos leer un significado tan estudiado en el lenguaje impreciso e informal aquí empleado, particularmente en vista de la clara intención en sentido contrario que ya hemos no-

tado y en vista de la situación anómala que resultaría por virtud de la cual el remedio para revisar decisiones del Tribunal de Apelación de Contribuciones por esta Corte sería uniforme como *específicamente* ha sido provisto en la Ley creando el Tribunal de Apelación de Contribuciones, excepto en una, y quizás la más importante, clase de casos.

El Procurador General admite una consecuencia de la posición por él adoptada. La cuestión que inmediatamente surgiría sería el período dentro del cual se debería radicar tal "apelación". La sugestión ofrecida por el Procurador General es que debemos seguir a este respecto la disposición de la Ley Núm. 172 disponiendo que la revisión mediante el certiorari de naturaleza especial que ahí se provee, debe ser solicitada dentro de treinta días. Pero si hemos de referirnos a la Ley Núm. 172 para determinar el período dentro del cual debe radicarse dicha petición de revisión, no vemos cómo podremos excluir que el contribuyente encuentre en la Ley creando el Tribunal de Apelación de Contribuciones el remedio que él ha de ejercitar dentro de ese término; a saber, el certiorari de naturaleza especial provisto por esa ley.

No es necesario que nos detengamos a considerar el lenguaje de la Ley Núm. 172 mediante el cual un contribuyente apela por medio de certiorari. La designación (*label*) que usó la legislatura no es importante. Ya hemos visto que la palabra "apelación" es usada indistintamente (loosely) a través de éste y otros estatutos como sinónimo de revisión por un organismo superior. Lo que sí es importante es que la Legislatura ha manifestado claramente su intención de que un contribuyente o el Tesorero pueda invocar la jurisdicción de esta Corte para revisar decisiones del Tribunal de Apelación de Contribuciones por medio de un remedio estatutario especial provisto en la Ley Núm. 172 que aparentemente es substancialmente similar al auto de certiorari clásico, con todos los requisitos del mismo, excepto lo que en contrario dispone la Ley Núm. 172 o excepto aquello que

necesariamente resultara a virtud de la naturaleza especial de estos tipos de casos.

No creemos pertinente detallar aquí el alcance de esta revisión. Un problema similar ha sido resuelto satisfactoriamente en esta jurisdicción. (*Montaner, Admor.* v. *Comisión Industrial*, 54 D.P.R. 722, 725; *González* v. *Comisión Industrial*, ante pág. 622, resuelto en junio 24, 1942). Ncs limitamos en este momento a manifestar que "los autos" que contempla la sección 5 de la Ley Núm. 172 necesariamente deben incluir, a menos que las partes acuerden lo contrario, la evidencia que tuvo ante sí el Tribunal de Apelación de Contribuciones. Como se indicó en el caso de *Jackson* v. *The People,* 9 Mich. 111 (1860), "La función de un certiorari no es, sin embargo, revisar cuestiones de hechos, sino cuestiones de derecho. Y cuando la corte de apelación entra en el examen de la evidencia lo hace no para determinar si las probabilidades se inclinan hacia uno u otro lado, sino simplemente para determinar si la evidencia es tal que justifique la conclusión (*finding*) como una inferencia válida de los hechos probados, independientemente de que dicha inferencia hubiera o no sido hecha por la corte de apelación". Véase también, *Review of Acts of Non-Judicial Bodies by Certiorari*, 19 Iowa Law Review 609; Gellhorn, *Administrative Law, Cases and Comments,* páginas 805–825. La Corte Suprema de los Estados Unidos, en una opinión del Juez Asociado Sr. Douglas, en *Wilmington Trust Co.* v. *Helvering,* 316 U.S.—, (86 L. ed. 426) decidido el 27 de abril de 1942, refiriéndose al Federal Board of Tax Appeals, estableció la pauta a seguir (*controlling test*) en el siguiente lenguaje: "Es de la competencia de la Junta, no de la Corte de Circuito de Apelaciones, pesar la evidencia, derivar inferencias de los hechos, y elegir entre inferencias contradictorias. La corte no puede sustituir su punto de vista sobre los hechos por el de la Junta. Cuando las conclusiones (*findings*) de la Junta están sostenidas por evidencia sustancial, ellas son con-

cluyentes. *Helvering* v. *Lazarus & Co.*, supra; *Helvering* v. *Kehoe*, 309 U. S. 277, y casos citados. Bajo el estatuto la corte puede modificar o revocar la decisión de la Junta solamente cuando ésta 'no está de acuerdo con la ley'. 44 Stat. 110, 26 U.S.C. Sec. 1141(c) (1).''

■ La contención del Procurador General de que la corporación no invocó la jurisdicción de esta corte dentro del período de treinta días concedido por la sección 5 de la Ley Núm. 172 carece de méritos. La petición fué radicada dentro del período de treinta días, pero expedimos el auto preliminar después de transcurrido éste. Evidentemente, nuestra jurisdicción depende de la fecha en que se radica la petición, y no del día en que se expide el auto preliminar. De otro modo, el, contribuyente o el Tesorero podrían ser privados de su remedio cuando soliciten el recurso de certiorari, a pesar de haber cumplido con el requisito estatutario, simplemente por la omisión de esta corte, como en el presente caso, de dejar de·expedir el auto preliminar antes de que expiren los treinta días.

Por lo tanto, llegamos a la conclusión que la petición de certiorari fué debidamente radicada de acuerdo con la sección 5 de la Ley Núm. 172, Leyes de Puerto Rico, 1941, y nos permite revisar la decisión del Tribunal de Apelación de Contribuciones sosteniendo la deficiencia tasada por el Tesorero en este caso.

■ Pasamos a considerar los méritos del caso. Aparentemente la cuestión principal en este caso en primera instancia envolvía la alegada responsabilidad de la corporación por contribuciones de ingresos sobre los pagos de beneficio que le fueron hechos por los Estados Unidos de acuerdo con una ley federal por virtud de la cual dichos pagos eran hechos a aquellas personas que se dedicaban a la siembra y venta de caña de azúcar bajo las restricciones y reglamentaciones de dicha ley. En caso de que hubiera responsabilidad de pagar contribuciones de ingresos sobre tales

pagos de beneficio, surgía una cuestión subsidiaria de si tal ingreso debía ser declarado en el año en que se sembró la caña o en el año en que en realidad se recibieron los pagos de beneficio.

Durante la vista celebrada ante la Junta de Revisión e Igualamiento, la corporación sostuvo que el no haber declarado como ingreso durante el año que terminó en 30 de junio de 1935 los pagos de beneficio por su caña en pie en esa fecha no era impropio, porque dichos pagos fueron en realidad recibidos durante el próximo año. Al decidir el caso basado en el récord que estaba ante la consideración de la Junta de Revisión e Igualamiento, el Tribunal de Apelación de Contribuciones afirmó que la regla general era que los pagos de beneficio estaban sujetos a contribución como ingresos durante el año en que fueron recibidos. Pero el tribunal continuó diciendo:

"Para aplicar esta decisión nuestra la contribuyente debió haber probado el valor de sus cañas en pie en junio 30, 1935, de tal manera que ese valor al aparecer en el balance no redujera el beneficio de 1935. Si la contribuyente hubiese probado ese valor podríamos hacerle justicia estableciendo el inventario de caña en pie en junio 30, 1935, y aplicando el principio ya decidido por este Tribunal de que el ingreso que representa la compensación corresponde a 1936. No podemos, sin embargo, hacer justicia a la contribuyente en este caso porque no tenemos la información."

El tribunal también llegó a la conclusión de que la planilla de contribuciones sobre ingresos aquí envuelta había sido hecha fraudulentamente. Esta conclusión se basa parcialmente en un informe de dos inspectores del Departamento de Hacienda que el tribunal encontró en el expediente que le fué entregado por la Junta de Revisión e Igualamiento. El informe le daba cuenta al Tesorero (a) de la negativa de ciertos oficiales de la corporación a suministrar documentos solicitados por los inspectores, y (b) de ciertos datos encontrados en los libros de la corporación para el año *siguiente* con relación a los pagos de beneficio en controversia.

 Presumiblemente, el Tribunal de Apelación de Contribuciones decidió resolver este caso sin conceder una vista en el mismo a virtud de la sección 11 de la Ley Núm. 172 de 1941. Dicha sección lee como sigue:

"Por la presente se autoriza y ordena al Tesorero de Puerto Rico en su carácter de Presidente nato de la actual Junta de Revisión e Igualamiento creada por la Ley No. 75 de 2 de agosto de 1923, según quedó enmendada por la Ley No. 46 de 26 de abril de 1928, a entregar al Tribunal de Apelación de Contribuciones, creado por esta Ley, todo el material, mobiliario, libros, y todos los asuntos que estén pendientes ante la Junta de Revisión e Igualamiento actualmente en función."

Nada hay en esa sección que autorice al Tribunal de Apelación de Contribuciones a resolver casos que estaban pendientes de decisión por la Junta de Revisión e Igualamiento. Por el contrario, la sección específicamente dispone la mera *entrega* de los expedientes y todos los "asuntos" que estén pendientes. Pero aún si la sección le hubiera concedido tal autoridad al tribunal, bien implícita o expresamente, ésta hubiera sido nula. Esto no equivale a decir que la contribuyente tenía un derecho adquirido al remedio anterior. Pero ciertamente tenía un derecho a algún remedio; a saber, a gozar de su día en corte ante un tribunal imparcial con poder para determinar cuáles eran los hechos.

¿Tuvo esta contribuyente en alguna ocasión su día en corte? Bajo la ley anteriormente vigente, la Junta de Revisión e Igualamiento era una agencia ejecutiva de revisión dentro del Departamento de Hacienda. Era una dependencia (*arm*) de la rama ejecutiva del gobierno (Ley Núm. 46, Leyes de Puerto Rico, 1928, pág. 313). Si un contribuyente no estaba conforme con sus decisiones, podía radicar un recurso ante la corte de distrito *donde su caso era visto de novo* (secciones 57(a) y 76(a) de la Ley de Contribuciones sobre Ingresos de 1924). La Junta de Revisión e Igualamiento, por tanto, servía meramente *dentro del Departamento*

*de Hacienda* como un freno (*check*) al criterio individual del Tesorero. Sus decisiones no eran en sentido alguno una revisión judicial de las decisiones del Tesorero. En verdad, el mismo Tesorero era Presidente de la Junta de Revisión e Igualamiento. La revisión judicial, si el contribuyente se sentía agraviado y quería invocarla, se obtenía en la corte de distrito, la cual determinaba·los hechos en primera instancia.

La Legislatura, por tanto, correctamente sólo dispuso en la sesión 11 de la Ley Núm. 172 que se le entregara al Tribunal de Apelación de Contribuciones los expedientes y asuntos que estaban pendientes ante la Junta. Si la Junta hubiera sido meramente sustiuída por·el Tribunal de Apelación de Contribuciones, posiblemente hubiera sido propio que el tribunal hubiera procedido a decidir todos los casos pendientes sin conceder una vista ulterior. El contribuyente entonces hubiera obtenido una vista sobre los hechos a través de un juicio *de novo* en la corte de distrito.

Sin embargo, el papel desempeñado por la·Junta era muy limitado y restringido. Sus funciones eran puramente ejecutivas. El Tribunal de Apelación de Contribuciones, por otro lado, tiene funciones, deberes y poderes mucho más amplios. Quizás ha heredado algunas de las funciones ejecutivas de la Junta. En estos momentos no estamos considerando esta cuestión. Lo que es más importante en esta ocasión es que el Tribunal de Apelación de Contribuciones ha venido a sustituir a la corte de distrito como el organismo que ha de determinar en última instancia las cuestiones de hecho en controversia entre los contribuyentes y el Tesorero. En el caso ante nuestra consideración, como la contribuyente nunca ha tenido la oportunidad de obtener la determinación de los hechos por la corte de distrito, tiene derecho a que se le conceda una vista a ese fin por el organismo que ha venido a reemplazar a la corte de distrito a ese respecto.

Aún asumiendo que el Tribunal de Apelación de Contribuciones hubiera concedido a la contribuyente una vista, estaba enteramente injustificado en tomar en consideración el informe de los inspectores del Departamento de Hacienda al determinar que las contribuciones en cuestión estaban vencidas y que la planilla sometida fué hecha fraudulentamente. Este informe nunca fué ofrecido en evidencia ante la Junta de Revisión e Igualamiento. La contribuyente nunca fué confrontada con él. Nunca tuvo la oportunidad de repreguntar a los autores del mismo o de ofrecer evidencia para refutar su contenido. El permitir que se llegue a conclusiones de hechos sobre cuestiones que están en controversia, basándose en documentos o testimonios sobre los cuales la parte agraviada tiene conocimiento por primera vez cuando el organismo que debe determinar los hechos emite su decisión, sería convertir el debido procedimiento de ley en letra muerta. Sin lugar a dudas, la regla más elemental de justicia (*a minimum standard of fair play*) requiere que se dé una oportunidad para que se repregunte y se ofrezca evidencia para rebatir el contenido de tal informe. (Véase Davis, *An Approach to Problems of Evidence in the Administrative Process,* 55 Harv. L. Rev. 364 (Enero 1942), particularmente a la página 411; Pillsbury, *Administrative Tribunals,* 36 Harv. L. Rev. 583, 587). La contribuyente tendrá derecho a esta oportunidad en la vista ante el Tribunal de Apelación de Contribuciones, la cual la Legislatura claramente tuvo en mente disfrutara todo contribuyente y la cual debe ser concedida a esta corporación.

*La decisión del Tribunal de Apelación de Contribuciones será revocada y el caso devuelto a dicho Tribunal para ulteriores procedimientos no inconsistentes con esta opinión.*