Justo Muñoz Colón, peticionario, *v.* Corte de Distrito de Ponce, Hon. Alberto S. Poventud, Juez, demandada.

Núm. 1534.—*Sometido:* Noviembre 1, 1943. *Resuelto:* Marzo 7, 1944.

*Leopoldo Tormes García,* abogado del peticionario; *R. Hernández Matos,* abogado del interventor, demandante en el pleito principal; *R. Rivera Zayas* y *G. Rivera Cestero* y *Hartzel, Kelley & Hartzel, Rafael O. Fernández* y *José L. Novas,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El 10 de diciembre de 1942 el obrero José Torres González radicó una querella en la Corte Municipal de Ponce en reclamación de salarios contra el que había sido su patrono, Justo Muñoz Colón. La corte municipal la desestimó, por lo que recurrió entonces para ante la corte de distrito. En la corte de distrito el obrero enmendó su querella de suerte que en lo sustancial alega: que allá para el 20 de junio de 1936 el querellante y el querellado celebraron verbalmente un contrato de servicios; que a virtud de dicho contrato el obrero se obligó con el patrono a prestarle sus servicios como celador y encargado de las fincas y del ganado del patrono, ordeñarle las vacas, distribuir la leche y otros trabajos necesarios en dichas fincas, obligándose a su vez el patrono a

pagarle un salario semanal de cinco dólares por siete días de ocho horas de trabajo; que el obrero cumplió su contrato desde el 20 de junio de 1936 hasta el 18 de noviembre de 1940, incluyendo domingos y días feriados; que a requerimiento del patrono, empezaba su labor a la una de la mañana y la continuaba hasta las doce del día, reanudándola después a la una de la tarde para terminarla a las cinco de la tarde; y que durante todo el tiempo indicado el obrero recibió de su patrono el salario convenido de cinco dólares semanales por las ocho horas diarias de trabajo, pero no recibió compensación alguna por las siete horas extras que diariamente trabajó y cuyo valor, según el obrero, asciende a $2,056.80, que el patrono se ha negado a pagarle, por lo cual reclama sentencia por dicha cantidad con intereses legales desde la radicación de la querella.

Impugnó el patrono la jurisdicción de la corte de distrito, solicitó la eliminación de ciertos particulares de la querella y contestó. En su contestación alegó el patrono que el obrero nunca realizó las labores que alega; que ningún día trabajó más de ocho horas; y que por el trabajo realizado el obrero recibió puntualmente el precio convenido a razón de cinco dólares semanales. Alegó además ciertas defensas, entre ellas la de prescripción de la acción, las cuales, en cuanto fuere necesario para la resolución de las cuestiones envueltas, serán discutidas oportunamente en esta opinión.

La corte de distrito desestimó las cuestiones de derecho suscitadas por el patrono, y penetrando en los méritos del caso declaró que de conformidad con la prueba el contrato de servicios era por semanas de siete días de ocho horas de trabajo diarias a razón de cinco dólares por semana; que el obrero había trabajado siete horas extras durante 1,612 días, o sea un total de 11,284 horas extras, y no 10,284 como equivocadamente reclamaba el obrero; calculó la jornada de ocho horas diarias a razón de setenta y dos centavos, o sea nueve centavos por hora, y tomando ese precio por base, concedió compensación sencilla por dichas siete horas y doble

compensación por la novena hora, por lo que dictó sentencia a favor del obrero por la cantidad de $1,160.64, sin costas ni honorarios de abogado.

A fin de que se revise dicha sentencia, el patrono presentó en este tribunal una petición de *certiorari*. Habida cuenta de que las cuestiones envueltas son de interés público, expedimos el auto de conformidad con la Ley núm. 32 de 3 de mayo de 1943 (pág. 85).

◼ Siguiendo el orden lógico, la primera cuestión a resolver es si este tribunal tiene o no jurisdicción para conocer de este caso. Es cierto que la sección 12 de la Ley núm. 10 de 1917 ((2) pág. 217), según fué enmendada, dispone que en los juicios por reclamación de salarios agrícolas no se dará más de una apelación, y que como el caso se inició en la corte municipal, al apelarse de su sentencia para ante la corte de distrito tuvo efecto la primera y única apelación que concede la ley. Pero el recurso que ahora nos ocupa no es una apelación, sino un auto de certiorari de naturaleza especial, puesto que bajo los términos expresos de la ley que crea dicho recurso pueden revisarse cuestiones tanto de derecho procesal como de derecho sustantivo, y se expide el auto prescindiendo del hecho de que la resolución o sentencia de que se trate sea o no revisable mediante apelación ordinaria ante el Tribunal Supremo. No siendo, pues, éste un recurso de apelación, la sección 12 de la Ley núm. 10 de 1917 antes citada no nos priva de jurisdicción para conocer del mismo.

◼◼ Resuelta la cuestión preliminar a que acabamos de referirnos, pasaremos al nervio de este recurso, es decir, determinar si el contrato de servicios comprendía solamente ocho horas diarias de trabajo como declaró probado el juez, o si por el contrario incluía las quince horas diarias que alegó haber trabajado el obrero.

La función de un recurso de certiorari, como es el presente, no es revisar cuestiones de hecho, sino de derecho; pero cuando las conclusiones de hecho a que llega el tribu-

nal inferior no están sostenidas por la evidencia, en ese caso el error que comete el tribunal inferior al dar por probado un hecho que no está sostenido por evidencia alguna, es un error de derecho revisable por certiorari. *Mayagüez Sugar Co. v. Tribunal de Apelación,* 60 D.P.R. 753, 762, y casos citados.

En el presente caso la conclusión a que llegó la corte inferior al efecto de que el obrero se obligó con el patrono a trabajar ocho horas diarias solamente, no encuentra el más ligero apoyo en la evidencia. La única prueba que en el récord existe sobre ese particular es la declaración del propio obrero. En su examen directo declaró que ganaba cinco dólares semanales y trabajaba quince horas diarias. Transcripción de evidencia, pág. 7. Nada declaró tendente a demostrar que su contrato fuese por jornadas de ocho horas. En cambio, el examen de repreguntas demostró lo contrario:

"Cuando usted convino trabajar con don Justo Muñoz, ¿usted sabía que tenía que hacer todo ese trabajo que dijo ahora, por cinco pesos? —Sí, señor.

"¿Usted sabía eso? —Sí, señor.

"¿Y usted observó ese contrato de arrendamiento de servicios en esa forma hasta esa fecha? —Sí, señor.

"¿Y no reclamó nunca nada? —No, señor.

"La primera vez que usted fué a reclamar, después de haber dejado de trabajar, que fué donde la supervisora, ¿cuándo fué? —El dieciocho de noviembre de mil novecientos cuarenta.

"¿Después de usted haber dejado de trabajar con don Justo? —Sí, señor.

"¿Entonces, usted convino con don Justo en trabajar por cinco pesos semanales en esa forma? —Sí, señor.

"\*     \*     \*     \*     \*     \*     \*

"En ese período del treinta y seis, del año treinta y seis al año cuarenta, a que usted se ha querido referir, ¿siempre hizo la misma clase de trabajo para don Justo Muñoz? —La misma.

"¿Para lo que usted fué hablado, para ganar cinco dólares semanales? —Sí, señor.

"¿Nunca hizo trabajo distinto? —No, señor. Después hacía el trabajo que veía la vaquería, y estaba en la finca volteándola.

"¿Don Justo Muñoz en alguna ocasión se comprometió a pagarle más de cinco dólares semanales, por ese trabajo que usted hacía para él? —No, señor.''

Eso es todo lo que aparece del récord respecto a las horas de trabajo. Con esa evidencia no comprendemos cómo pudo la corte inferior llegar a la conclusión de que el contrato de servicios se celebró por ocho horas diarias, cuando el propio obrero declara terminantemente que dicho contrato comprendía las quince horas que él trabajó. Estando el trabajo realizado por el obrero dentro de lo que él contrató por cinco dólares semanales, es de perfecta aplicación lo dicho por este Tribunal en el caso de *Cardona* v. *Corte,* 62 D.P.R. 61, 98:

"Nosotros, por supuesto, ni por inferencia ni de otro modo, reformaremos el contrato existente entre las partes para hacer que el $1.68 cubra las doce horas. Pero si la prueba que se presente en el juicio demuestra que tal fué en realidad la intención o convenio entre las partes, o que existía una costumbre prevaleciente a ese efecto, los obreros han obtenido una victoria ilusoria con nuestra decisión al efecto de que tienen derecho a compensación por las décima, undécima y duodécima horas, a razón del tipo corriente. Es decir, si las partes en realidad convinieron en que el obrero recibiría $1.68 por doce horas, resultando que el tipo por hora es 14 centavos, el obrero ya ha sido totalmente compensado al tipo ordinario por todas las doce horas, aunque él tendrá, desde luego, derecho a la compensación extra por la novena hora que el estatuto específicamente dispone deberá recibir.''

La conclusión a que acabamos de llegar no impide, sin embargo, que el obrero tenga la correspondiente compensación extra por la novena hora de cada día por él trabajado, conforme sostuvimos en *Cardona* v. *Corte,* supra. Según declaró probado la corte inferior, el obrero trabajó durante 1,612 días, a razón de quince horas diarias, y siendo ello así le corresponde la compensación extra que determina la ley por la novena hora de cada uno de los 1,612 días por él trabajados. Como él trabajaba ciento cinco horas semanales

por cinco dólares, una simple operación aritmética demostrará que el precio por cada hora de trabajo era de $.0476, y por lo tanto la compensación adicional asciende a $76.73, y no a $290.16 como resolvió la corte inferior estimando el salario a razón de nueve centavos por hora y no a $.0476 como resulta de acuerdo con el contrato celebrado.

■ Alega el patrono que como el obrero reclamó por primera vez la compensación adicional cuando radicó la querella en la corte municipal el 10 de diciembre de 1942, la acción en cobro de los servicios prestados antes del 10 de diciembre de 1939 está prescrita de conformidad con el artículo 1867 dèl Código Civil (ed. 1930), que en lo pertinente dispone:

"Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

"*     *     *     *     *     *     *

"3. La de pagar a los menestrales, criados y jornaleros el importe de sus servicios, y de los suministros o desembolsos que hubiesen hecho, concernientes a los mismos.

"*     *     *     *     *     *     *

"El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará *desde que dejaron de prestarse los respectivos servicios.*" (Bastardillas nuestras.)

Tanto el patrono como el *amicus curiae* sostienen que el término prescriptivo de tres años empezó a correr desde que al final de cada semana recibió el obrero el pago de su salario y no desde que dejó de prestar sus servicios el 18 de noviembre de 1940, como sostiene el obrero. Los primeros basan su tesis en sentencias relativamente recientes del Tribunal Supremo de España, y especialmente las de 26 de mayo y 19 de diciembre de 1933. El obrero a su vez invoca la interpretación que hasta que se dictaron dichas sentencias el Tribunal Supremo de España venía dando al artículo 1967 del Código Civil español, igual al 1867 del nuestro. Esa interpretación es al efecto de que la prescripción empieza a correr desde que dejaron de prestarse los servicios respec-

tivos. Aplicándola al presente caso tendremos que la prescripción no empezó a correr sino desde el 18 de noviembre de 1940, cuando el obrero dejó de prestar sus servicios al patrono. Habiéndose radicado la querella el 10 de diciembre de 1942, es evidente, de acuerdo con dicha interpretación que la acción no ha prescrito ni en todo ni en parte.

Un examen de las sentencias del Tribunal Supremo de España citadas por el patrono y el amicus curiae demuestra la inaplicabilidad de las mismas en esta jurisdicción. Ello es así porque como se dice en la sentencia de 19 de diciembre de 1933, aquel tribunal entiende que por ser el Código de Trabajo posterior al Código Civil, el artículo 1967 de este último debe subordinarse a lo prescrito en el artículo 18 del primero, que según se transcribe en el alegato del obrero dice así:

"El contrato de trabajo, cualquiera que sea, durará el tiempo estipulado.

"A falta de estipulación expresa, y salvo el caso de prueba de costumbre en contrario, se entenderá concertado: por día, cuando la remuneración sea diaria, aun cuando su pago se efectúe por semanas o por quincenas; por meses, cuando la remuneración sea mensual, y anual, si es por años."

El referido Código de Trabajo no rige en Puerto Rico y por consiguiente el artículo 1867 de nuestro Código Civil no está sujeto a tal subordinación. Pero independientemente del aludido Código de Trabajo, el Tribunal Supremo de España, justificando la nueva interpretación que da ahora al Código Civil, incurre en el error de interpretar el artículo 1967 en relación con el 1969 del mismo Código, el cual literalmente dice así:

"Artículo 1969 [Español].—El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse."

Decimos que es erróneo interpretar el artículo 1967 del Código Civil español en relación con el 1969 porque este último, por ser de carácter supletorio, sólo debe aplicarse de

acuerdo con sus propios términos a los efectos de determinar el punto de partida de la prescripción, *cuando no haya disposición especial que otra cosa determine*. Pero como esa disposición especial la contiene el artículo 1967 al disponer, "El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores *se contará desde que dejaron de prestarse los respectivos servicios*" (bastardillas nuestras), no procede aplicar esa disposición general de carácter supletorio. La frase *desde que dejaron de prestarse los respectivos servicios,* si es que hemos de entender sus palabras en su más corriente y usual significación, de acuerdo con el uso general y popular de las voces, artículo 15 del Código Civil, no puede significar otra cosa sino que la prescripción en este caso empezó a correr desde el 18 de noviembre de 1940, fecha desde la cual el obrero dejó de prestar los servicios que desde el 20 de junio de 1936 venía prestando ininterrumpidamente al patrono. Consecuentemente, en consonancia con el artículo 1867 de nuestro Código Civil, debemos resolver que la acción en este caso ejercitada no está prescrita ni en todo ni en parte, ya que desde el 18 de noviembre de 1940, fecha en que el obrero dejó de prestar sus servicios, hasta el 10 de diciembre de 1942, en que se radicó la querella en la corte municipal, no había transcurrido el término de tres años que para la prescripción de esta clase de acciones fija el citado artículo 1867 del Código Civil.

Nos damos cuenta de que la conclusión a que llegamos en este caso en lo que respecta a la compensación del obrero puede aparecer hasta cierto punto injusta para él, pero la compensación de cinco dólares semanales por el trabajo que él realizaba en quince horas diarias fué lo que él convino en su contrato de servicios, siendo de aplicación una vez más lo que dijimos en el caso de *Cardona* v. *Corte,* supra, pág. 97:

"De acuerdo con el *Fair Labor Standards Act* el tipo acostumbrado o el fijado en el contrato no podrá ser menor que el tipo mínimo allí establecido. Pero, como ya hemos indicado, la Ley núm. 49 no

dispuso tipo mínimo alguno, y, excepto en cuanto a convenios colectivos, nada existe a modo de ley insular a la que se haya llamado nuestra atención, que impida que las partes lleven a cabo un contrato a base de salarios de hambre.''

Como no se trata en este caso de un recurso de apelación, dentro del cual podríamos dictar la sentencia que debió haber dictado la corte de distrito, *procede anular la sentencia recurrida y devolver el caso a la corte inferior para que proceda a dictar la que corresponda en armonía con los principios enunciados en esta opinión.*