FÉLIX JIMÉNEZ, peticionario, *v.* CORTE DE DISTRITO DE BAYAMÓN, HON. EMILIO S. BELAVAL, antes su juez, hoy HON. JOSÉ CALDERÓN, demandada.

Núm. 29.—*Sometido:* Marzo 12, 1945. *Resuelto:* Mayo 21, 1945.

*Dubón & Ochoteco*, abogados del peticionario; *Samuel R. Quiñones*, abogado de los interventores, querellantes en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El 22 de septiembre de 1943, nueve querellantes iniciaron una reclamación por jornales adeudádosles en la suma de $15,834.43, de conformidad con la Ley núm. 10, Leyes de Puerto Rico, 1917 (II pág. 2177), contra su patrono, Félix Jiménez, quien explotaba una vaquería. El querellado apeló para ante la corte de distrito de la sentencia dictada por la corte municipal a favor de los querellantes. La corte de distrito, después de hacer drásticas deducciones en las sumas concedidas a los querellantes, dictó sentencia a favor de siete de ellos. Las reclamaciones aquí envueltas son por jornales agrícolas; por tanto el presente caso no es apelable ante este Tribunal. Sin embargo, toda vez que este caso envuelve dos importantes cuestiones de derecho que pueden surgir frecuentemente en los pleitos entablados por los obreros para el pago de jornales adeudados, expedimos el auto de *certiorari* a tenor con la Ley núm. 32, Leyes de Puerto Rico, 1943 (pág. 85).

La primera de estas dos cuestiones se refiere a la concesión por la corte inferior de honorarios de abogado en la suma de $150. La sección 14 de la Ley núm. 10 de 1917 dispone que "todas las costas que se devengaren en esta clase de juicios serán satisfechas de oficio". Los querellantes alegan que la prohibición de la sección 14 no se aplica a los

honorarios de abogado, por el fundamento de que la Ley núm. 94, Leyes de Puerto Rico, 1937 (Leyes de 1936–37, pág. 239) al enmendar el artículo 327 del Código de Enjuiciamiento Civil, incluyó los honorarios de abogado en un inciso aparte y los clasificó como algo diferente a las costas.

No nos detendremos a examinar esta contención, por el motivo de que la Legislatura, al prohibir cualquier concesión para costas, empleó dicha palabra con el significado que tenía en 1917. Y no puede haber duda de que para esa época las costas incluían los honorarios de abogado (artículo 327, Código de Enjuiciamiento Civil, Edición de 1933). Añadimos que nada encontramos en la Ley núm. 94 de 1937—el estatuto enmendatorio de la ley *general* en cuanto a costas —que nos permita decir que la Ley núm. 94 ha modificado o ha derogado *por implicación* la disposición *especial* y expresa de la sección 14 de la Ley núm. 10 de 1917 referente a costas en los pleitos de salarios radicados bajo la Ley núm. 10. (Véanse 1 Sutherland, *Statutory Construction*, Tercera Edición, sección 2021, pág. 486; *Pueblo de Puerto Rico v. Nieto et al.*, 64 D.P.R. 882; *Home Owners' Loan Corporation v. Creed*, 108 F.2d 153, 155 (C.C.A. 5th, 1939)). La Legislatura demostró que entendía que ésta era la ley cuando enmendó recientemente la sección 14 de la Ley núm. 10 de 1917 adicionándole el siguiente párrafo: "En todos los casos en que se dictare sentencia a favor de la parte querellante, si ésta compareciere representada por abogado particular, se condenará al querellado al pago de honorarios de abogado." (Ley núm. 17, Leyes de Puerto Rico, 1945). Por tanto resolvemos que la corte de distrito no tenía autoridad para conceder a los querellantes honorarios de abogado.

La segunda importante cuestión de derecho que nos indujo a expedir el auto de certiorari en este caso envuelve la defensa de prescripción. El artículo 1867 del Código Civil, después de disponer una prescripción de tres años para las reclamaciones de obreros por jornales adeudados, dice

que "el tiempo para la prescripción . . . se contará desde que dejaron de prestarse los respectivos servicios". De acuerdo con dicho artículo, si un obrero abandona el trabajo de su patrono, permanece ausente durante cierto tiempo sin explicación alguna y vuelve entonces a su trabajo, ¿opera este cese temporal de servicios en el sentido de empezar desde ese momento a correr la prescripción de cualquier reclamación por los servicios prestados con anterioridad a la fecha en que el obrero cesó temporalmente de prestar sus servicios?

Dijimos en *Muñoz* v. *Corte,* 63 D.P.R. 236, 244, que el estatuto "no puede significar otra cosa sino que la prescripción en este caso empezó a correr desde el 18 de noviembre de 1940, fecha desde la cual el obrero dejó de prestar los servicios que desde el 20 de junio de 1936 venía prestando ininterrumpidamente al patrono". Al exponer la regla deliberadamente empleamos la palabra "ininterrumpidamente". No estamos resolviendo que cada interrupción de servicio inicia la prescripción para servicios anteriores. El peticionario admite que "una mera ausencia del trabajo por un limitado número de días por parte del obrero, con prueba aportada por éste en cuanto a la causa que motivó la ausencia" no constituiría el cese de la prestación de servicios contemplado por la ley. Acontecimientos tales como una breve enfermedad del obrero, rotura de la maquinaria o escasez temporal de trabajo, no darían lugar a este resultado. Aquí sólo tenemos que resolver que cuando un querellante abandona el trabajo por meses o años en una industria que funciona todo el año, (¹) y no se ofrece una explicación para ello, el obrero cesa en dicho momento de rendirle servicios al patrono dentro del significado del artículo 1867.

Es inmaterial el hecho de que el obrero pueda volver y vuelva donde el mismo patrono y realice el mismo trabajo de conformidad con el mismo arreglo. Cuando el obrero

---

(¹)La cuestión de si la regla aquí enunciada se aplica a industrias que trabajan por temporadas no está envuelta en este caso y expresamente la dejamos sin resolver.

rompe el arreglo anterior, el estatuto prescriptivo por sus propios términos empieza a correr en cuanto a todos los servicios anteriores. Como dijimos en el caso de *Muñoz* al resolver la moción de reconsideración (pág. 245) el estatuto, en su funcionamiento práctico, es altamente irrazonable. No lo haremos más irrazonable tergiversando sus claras disposiciones resolviendo que un obrero permanente que trabaja todo el año, que deja su puesto durante años, no ha cesado en la prestación de sus servicios al patrono sencillamente porque algunos años después el mismo patrono lo vuelve a emplear. (²)

La corte de distrito resolvió como cuestión de hecho que durante un período de años ocurrieron frecuentes interrupciones en el trabajo de tres de los querellantes—Ricardo Ramos, Serapio Correa y Manuel Filomeno. (³) Al así resolverlo,

---

(²) Aun cuando Sánchez Román, Estudios de Derecho Civil, Vol. 4, pág. 468; Enciclopedia Jurídica Española, Vol. 25, pág. 462; Sentencia de 9 de julio de 1928, Sentencia de 6 de mayo de 1929, Sentencia de 16 de mayo de 1929, Sentencia de 11 de enero de 1929, de la Corte Suprema de España; y Sentencia núm. 99 de 2 de diciembre de 1905, de la Corte Suprema de Cuba, discuten los equivalentes españoles y cubanos del artículo 1867 de nuestro Código Civil, no arrojan luz sobre el problema específico ante nos.

(³) La corte concluyó que ellos trabajaron como sigue:

Ricardo Ramos—De enero 2 de 1937 a enero 9 de 1937; de enero 17 de 1937 a abril 10 de 1937; de mayo 2 a junio 12 de 1937; de junio 20 a julio 17 de 1937; de enero 30 de 1938 a junio 18 de 1938; de julio 24 de 1938 a noviembre 9 de 1940; de noviembre 17 de 1940 a diciembre 31 de 1940; de enero 12 de 1941 a mayo 4 de 1941; de mayo 18 de 1941 a agosto 24 de 1941; de septiembre 1, de 1941 a septiembre 7 de 1941; de noviembre 2 de 1941 a noviembre 9 de 1941; de enero 1 de 1942 a marzo 9 de 1942; de marzo 10 de 1942 a julio 31 de 1942; de agosto 1 de 1942 a agosto 31 de 1942; y de septiembre 1 de 1942 a diciembre 31 de 1942.

Serapio Correa—De enero 10 de 1937 a enero 17 de 1937; de febrero 1 de 1937 a marzo 13 de 1937; de abril 25 de 1937 a mayo 23 de 1937; de julio 18 de 1937 a diciembre 31 de 1937; de enero 1 de 1938 a marzo 5 de 1938; de julio 24 de 1938 a agosto 14 de 1938; de octubre 1 de 1938 a febrero 3 de 1939; de noviembre 26 de 1940 a febrero 28 de 1941; de noviembre 16 de 1941 a enero 28 de 1942; de enero 29 de 1942 a marzo 9 de 1942; de marzo 9 de 1942 a mayo 15 de 1942; de junio 24 de 1942 a julio 4 de 1942; y de septiembre 14 de 1942 a diciembre 31 de 1942.

Manuel Filomeno—De enero 11 de 1937 a mayo 15 de 1937; de mayo 16 de 1937 a diciembre 31 de 1937; de enero 1 de 1938 a junio 30 de 1938; de junio 30 de 1938 a abril 6 de 1940; de septiembre 7 de 1940 a septiembre 13 de 1940; y de diciembre 8 de 1940 a diciembre 31 de 1940.

la corte de distrito aceptó las nóminas del peticionario a este fin y rechazó el testimonio de estos tres obreros negando la ocurrencia de dichas interrupciones.(⁴) Sin embargo, a pesar de estas conclusiones de hecho, la corte de distrito dictó sentencia a favor de estos querellantes por las sumas de $927.88, $397.52 y $677.03, respectivamente, sin hacer mención alguna de la cuestión de prescripción en cuanto a ellos.(⁵) Pero a la luz de las propias conclusiones de hecho de la corte inferior, no podemos permitir que subsista la sentencia a favor de estos querellantes.

En cuanto a Ramos, no tenemos que preocuparnos con ninguna de las interrupciones en los servicios con anterioridad a julio 17 de 1937. Abandonó el empleo de su patrono en dicho día y no volvió al trabajo hasta el 30 de enero de 1938—un período de más de seis meses. En ausencia de cualquier explicación de este prolongado período de desempleo, el hecho de que transcurrieron más de tres años desde el 17 de julio de 1937 sin que se entablara pleito alguno, prescribe todas las reclamaciones de Ramos por servicios prestados con anterioridad a dicha fecha. En cuanto a su reclamación por los servicios prestados entre enero 30 de 1938 y noviembre 9 de 1940, no podemos resolver que esté

---

(⁴)La corte inferior dijo en su opinión: ''Haciendo uso de las nóminas producidas por el patrono en su contestación *en cuanto a los períodos de tiempo en los cuales los obreros trabajaron* y los jornales que devengaron en dichos períodos de tiempo es que hemos resuelto este caso, ya que creemos que la información del patrono en cuanto a términos del contrato y los jornales percibidos es siempre superior a la información incoherente que suelen dar los obreros sobre este punto.'' (Bastardillas nuestras).

(⁵)No nos podemos explicar el que la corte inferior no haya discutido esta cuestión, en vista de los hechos (1) que resolvió que la reclamación de un querellante estaba prescrita completamente, y (2) que aplicó este mismo principio al querellante Juan Carmona, resolviendo que había trabajado por un período que terminó el 31 de diciembre de 1938, cuya reclamación estaba prescrita para septiembre 22 de 1943, fecha de la radicación de la querella en este caso. La corte inferior dice entonces que ''El obrero Juan Carmona volvió a empezar a trabajar con el patrono desde febrero 2 de 1942 hasta diciembre 31 de 1942, y su reclamación en cuanto a este segundo período no está prescrita.'' Notamos de paso que toda la reclamación de Carmona cae por una razón diferente como se notará más adelante.

prescrita toda vez que la única interrupción habida fué de junio 18 a julio 24 de 1938, declarando el querellante que estuvo enfermo durante algunas semanas.

En el caso de Correa, todas sus reclamaciones por servicios prestados antes del 3 de febrero de 1939 están prescritas, toda vez que abandonó el empleo el 3 de febrero de 1939, estando ausente durante veintidós meses y no ofreció explicación para ello. De igual manera, Filomeno no puede recobrar por servicios prestados antes del 13 de septiembre de 1940, toda vez que abandonó el empleo en dicho día por un período de casi tres meses, sin ofrecer explicación alguna.

■ Quedan por considerar dos objeciones levantadas por los querellantes contra la defensa de prescripción aquí interpuesta de acuerdo con el artículo 1867. La primera es que en su contestación el peticionario invocó la prescripción de un año del artículo 1868 del Código Civil, mientras que el artículo 128 del Código de Enjuiciamiento Civil dispone que "Al alegarse la prescripción no es necesario exponer los hechos que la demuestren, pero podrá consignarse en términos generales que la causa de la acción ha quedado extinguida por ministerio de la ley, citándose ésta con el número del artículo y el correspondiente párrafo, si estuviere así dividido; . . . ".

Reconocemos la fuerza del argumento de los querellantes en cuanto a que, como cuestión de alegaciones, deben alegarse los hechos propiamente dichos o la disposición de ley invocada, y que toda vez que el querellado no hizo ninguna de estas cosas en este caso, no se alegó debidamente la defensa de prescripción (*Cf. Orta* v. *Arzuaga et al.,* 23 D.P.R. 259). Pero algo más ocurrió en este caso. El primer pronunciamiento hecho por el abogado del querellado en el juicio fué que se opondría a cualquier prueba referente a reclamaciones por servicios prestados más de *tres* años con anterioridad al pleito. Tales objeciones se hicieron consistentemente a través del juicio basadas en la prescripción de tres años

comprendida en el artículo 1867 del Código Civil. Y el testimonio del querellado se encaminó a dicho fin. Además, los querellantes no hicieron objeción alguna durante el juicio mientras se presentaba tal prueba. Por tanto somos del criterio de que las alegaciones sobre dicha cuestión específica deben ser consideradas como enmendadas para conformarlas a la prueba. Esto es particularmente cierto en un caso de salario, toda vez que la Legislatura nos ha ordenado en la Ley núm. 10 de 1917, según ha sido enmendada, liberalizar las estrictas reglas sobre alegaciones en casos de salarios.

El segundo punto que levantan los querellantes contra la invocación aquí de la prescripción, es que a tenor con el artículo 1873 del Código Civil(6) en este caso la prescripción se interrumpió por "reclamaciones extrajudiciales" hechas por los obreros al patrono por sus salarios adeudados. Asumiendo que el artículo 1873 sea de aplicación a casos de esta índole, no encontramos evidencia satisfactoria en el récord de reclamaciones precisas y expresas hechas por estos tres querellantes al patrono. El testimonio de los querellantes, excepto Ramos, Correa y Filomeno, en relación con sus propias reclamaciones, no puede ayudar a estos tres. Correa dijo que había hecho reclamaciones, pero no especificó las fechas ni la naturaleza de las mismas. Y Ramos y Filomeno sencillamente declararon de modo general que reclamaron *doble* paga por horas extra cuando se les pagaba los sábados, y que el peticionario siempre le replicó que obtendrían tal doble paga cuando la ley así lo dispusiera. Como veremos, la corte de distrito no dió crédito al testimonio de los obreros en cuanto al contrato verbal de doble paga; más bien creyó que el referido contrato entre las partes fué por paga ordinaria por trabajo realizado en exceso de ocho horas. Presumiblemente, de igual manera no creyó

---

(6)Dicho artículo dice como sigue: "La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

que una reclamación por salarios, no provistos en el contrato, fué hecha no obstante por los querellantes. Y la corte inferior no halló probado que tales reclamaciones extrajudiciales se hicieran. Por tanto no podemos en este estado del récord resolver que estos tres querellantes hicieron reclamaciones extrajudiciales suficientes para interrumpir la prescripción.

Sobre los méritos del caso, la corte de distrito halló probado que algunos querellantes trabajaron once horas diarias y que otros trabajaron diez. También halló probada la existencia de un contrato verbal entre los querellantes y su patrono, por el cual trabajarían ocho horas diarias durante seis días a la semana por un salario semanal estipulado. Por tanto resolvió la corte que tenían derecho a doble paga por la novena hora y paga sencilla por las horas siguientes calculadas a un tipo por hora obtenido dividiendo el salario semanal por cuarenta y ocho horas. Al llegar a estas conclusiones, la corte de distrito, como hemos visto, no dió crédito a la declaración de los obreros al efecto de que se pagaría doble compensación por trabajo realizado en exceso de la octava hora; también concluyó que exageraban cuando declararon que habían trabajado trece horas diarias.

Hubo un patente conflicto en la prueba. El patrono afirma que los querellantes fueron contratados para trabajar ocho horas diarias, que fué todo lo que trabajaron, con la esporádica excepción de que cuando llovía o cuando se ausentaban algunos obreros, se atrasaba el trabajo y se trabajaba un poco más. Sus nóminas no nos ayudan en esta cuestión. Sólo demuestran los días trabajados y las sumas pagadas. Guardan silencio sobre el número de horas trabajadas. Los querellantes, por otro lado, todos declararon insistente y consistentemente en cuanto a trabajo extra. Si bien, como ya dijimos, la corte de distrito no dió crédito a algunas partes de su declaración, sí resolvió que ellos habían trabajado algunas horas extra en exceso de las ocho

horas que no estaban incluídas en el contrato de seis días semanales de ocho horas y por las cuales tenían derecho por tanto a compensación a tiempo sencillo por hora (*Cardona* v. *Corte,* 62 D.P.R. 61; *Sucesión Serrallés* v. *Corte de Distrito,* 64 D.P.R. 497; *Avellanet* v. *Porto Rican Express,* 64 D.P.R. 693). Ya que hay alguna base en el récord para sostener esta conclusión, no estamos en libertad de intervenir con la misma, especialmente cuando el caso no está ante esta Corte en apelación, sino por certiorari bajo la Ley núm. 32 de 1943. En vista de lo que ya hemos dicho, son distinguibles los casos de *Torres* v. *González,* 63 D.P.R. 964, y *Muñoz* v. *Corte de Distrito,* 63 D.P.R. 236. En el caso de *Torres* estaba envuelta una apelación ordinaria; el caso de *Muñoz* vino aquí en certiorari bajo la Ley núm. 32, pero en dicho caso nada había en el récord en qué basar la sentencia y tuvimos que dejarla sin efecto como cuestión de derecho.

El último punto presentado por el peticionario es que un número de los querellantes firmó descargos por las reclamaciones aquí envueltas. Estos supuestos descargos fueron firmados el día de Noche Buena por obreros analfabetos. Recibieron cantidades oscilando entre $5 y $23, por reclamaciones ascendentes en total a $15,834.43. Si bien su opinión no es lo clara que podría haber sido sobre esta cuestión, el juez de distrito parece haber creído el testimonio de los obreros al efecto de que se les dijo que estos cheques eran en defecto de la acostumbrada fiesta de Noche Buena; que en dicho momento no se discutió cuestión alguna de salarios adeudados; y que el peticionario les dijo que firmaran unos papeles que él necesitaba para el Gobierno. Si bien hay también alguna discusión en la opinión en cuanto a la alegada insuficiencia de la causa en el contrato de transacción y compromiso (*accord and satisfaction*), estamos satisfechos en que éstas fueron las conclusiones de la corte de distrito. Aquí también respetamos sus conclusiones en vista

de que en el récord hay base para ellas. Por tanto nunca llegamos a la cuestión de si tales descargos por salarios adeudados pueden otorgarse debidamente en esta jurisdicción y bajo qué circunstancia (*Cf. Brooklyn Savings Bank* v. *O'Neill,___U. S.___*, resuelto en 9 de abril de 1945, que envuelve descargos de reclamaciones por salarios que se admitía se adeudaban bajo las expresas disposiciones de la Ley sobre Normas Razonables del Trabajo, que es un estatuto de salario mínimo).

■ Durante el juicio en este caso, al finalizar la declaración de Juan Carmona, la corte de distrito desestimó la querella en los méritos en cuanto a Carmona, por falta total de prueba en cuanto a su reclamación. Esto se hizo sin oír prueba alguna del querellado en cuanto a la reclamación de Carmona. Sin embargo, después que el caso quedó sometido al juez para fallo, éste dictó sentencia a favor de Carmona, por supuestos servicios prestados en el 1942. El abogado de los querellantes admite aquí que la sentencia a favor de Carmona debe dejarse sin efecto. Creemos que es nuestro deber hacer constar que la actuación de la corte de distrito al dictar sentencia a favor de Carmona bajo tales circunstancias es inexplicable.

*Por las razones aquí expuestas, el caso se devolverá a la corte de distrito con instrucciones de que modifique la sentencia (1) eliminando la disposición de honorarios de abogado; (2) dictando sentencia a favor del querellado en cuanto a la reclamación de Juan Carmona; y (3) limitando la sentencia a favor de Ricardo Ramos, Serapio Correa y Manuel Filomeno por servicios prestados por ellos con posterioridad al 30 de enero de 1938, 26 de noviembre de 1940 y 8 de diciembre de 1940, respectivamente.*