The Mayagüez Light, Power & Ice Co., Inc., peticionaria, v. Tribunal de Contribuciones de Puerto Rico, etc., demandado.

Núm. 47.—*Sometido:* Abril 23, 1945. *Resuelto:* Mayo 21, 1945.

J. *Alemañy Sosa,* abogado de la peticionaria; *Hon. Procurador General Interino Jesús A. González* y *M. Velázquez Flores, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El 17 de junio de 1944 la peticionaria radicó ante el Tribunal de Contribuciones una querella para revisar la actuación del Tesorero al notificarle una deficiencia en su planilla de contribuciones sobre ingresos correspondiente al año 1936. El 7 de marzo de 1945 el Tribunal de Contribuciones *sua sponte* desestimó la querella por falta de jurisdicción por haber dejado la peticionaria de radicar una fianza por tres cuartas partes del importe de la contribución en controver-

sia, de conformidad con la sección 57(a) de la Ley de Contribuciones sobre Ingresos, según fué enmendada por la Ley núm. 23, Leyes de Puerto Rico, 1941, Sesión Extraordinaria ((2) pág. 73). Expedimos el auto de *certiorari* con el fin de revisar dicha decisión.

La sección 57(a), después de proveer la revisión de la resolución del Tesorero con respecto a cualquier deficiencia dentro de los treinta días siguientes a la notificación de tal resolución, dice: *"Disponiéndose,* que (1) la resolución del Tesorero sobre la determinación de cualquier deficiencia y (2) la prestación de fianza por el contribuyente, sujeta ésta a la aprobación del Tesorero, por una suma no menor de tres cuartas (¾) partes del montante de la contribución apelada, serán ambos y cada uno requisitos previos indispensables para acudir al referido tribunal, sin los cuales éste no adquirirá jurisdicción.''

La peticionaria alega que la Ley núm. 169, Leyes de Puerto Rico, 1943 (pág. 601), que constituye la última expresión de la Legislatura en cuanto a los poderes y jurisdicción del Tribunal de Contribuciones, ha derogado este requisito de la fianza. Esta teoría está basada en el lenguaje de la sección 3 de la Ley núm. 169. El segundo párrafo de dicha sección dispone que las querellas deben radicarse dentro de los treinta días siguientes a la fecha de la notificación de la resolución del Tesorero en cinco clases de casos. Luego de un disponiéndose en cuanto a la moción de reconsideración por el Tesorero, encontramos el lenguaje en que se apoya la peticionaria. Dice como sigue:

*"Y disponiéndose, además,* que el procedimiento de apremio o ejecución para hacer efectiva la contribución objeto de la acción o recurso quedará en suspenso, cuando las leyes sobre la materia así lo autorice y antes no lo hubiere suspendido el Tesorero de acuerdo con dichas leyes, hasta que emita su decisión el Tribunal siempre que éste, a solicitud del contribuyente y con citación del Tesorero de Puerto Rico

permita el afianzamiento, a su entera satisfacción, de la contribución en controversia, incluyendo intereses y penalidades, la autorización para prestar cuya fianza así como la fijación de su cuantía, serán facultad discrecional y exclusiva del Tribunal, teniendo en cuenta, en cada caso, los hechos y circunstancias que a su juicio concurran y afecten el interés tanto del contribuyente como de El Pueblo de Puerto Rico."

Como dijimos en *Mayagüez Sugar Co.* v. *Tribunal de Apelación de Contribuciones,* 60 D.P.R. 753, 757-9, la Ley de Contribuciones sobre Ingresos—contrario a la situación prevaleciente cuando se decidió el caso de *P. R. Fertilizer Co.* v. *Domenech, Tesorero,* 50 D.P.R. 405—no es ya la única fuente de *todo* el procedimiento a seguir para obtener una revisión judicial, de todas aquellas cuestiones que surgen al amparo de ella. Tanto la Ley núm. 172, Leyes de Puerto Rico, 1941—y la presente Ley, Ley núm. 169, 1943—contienen requisitos de procedimiento y de jurisdicción. Por tanto debemos referirnos ahora a la Ley de Contribuciones sobre Ingresos y a la Ley núm. 169 para determinar tales cuestiones.

Indudablemente estas dos leyes coinciden en algunos de los requisitos procesales trayendo como resultado una gran confusión en la litigación contributiva de los últimos años. Ésta es una situación indeseable en extremo. Las partes en una controversia judicial tienen derecho a una decisión en los méritos, especialmente en disputas contributivas. A ese fin los requisitos de procedimiento y de jurisdicción deben ser tan claros y tan sencillos que nadie pueda razonablemente equivocar su significado. Esa meta ideal todavía no ha sido alcanzada completamente en los casos contributivos (Véanse *Standard Oil Company (New Jersey)* v. *Tribunal de Contribuciones,* 64 D P.R. 672; *El Próspero Fruit Co.* v. *Tribunal de Contribuciones,* 64 D.P.R. 661). Una ligera lectura de estas dos leyes revela que este caso envuelve una vez más una cuestión de procedimiento en la cual hay con-

siderable campo de argumentación en ambos lados. Como las cortes se confrontan diariamente con estas materias que caen dentro de su competencia especial—en verdad, la Legislatura ha creído conveniente conferirnos autoridad, que hemos ejercido, para promulgar Reglas de Procedimiento para las cortes—confiamos en que no está mal que sugiramos que cuando se emprenda la tarea de revisar nuestra estructura contributiva autorizada por legislación reciente, se haga un esfuerzo para delinear un estatuto de procedimiento para toda la litigación contributiva que sea sencillo, uniforme y completo. Las decisiones de este Tribunal sólo sirven de paliativo; el remedio está en manos de la Legislatura.

Refiriéndonos al punto específico ante nos, encontramos que el problema aquí envuelto es más difícil que el del caso de *Standard Oil Company.* Allí el punto era si la Ley núm. 169 había eliminado la disposición de la sección 76(a) de la Ley de Contribuciones sobre Ingresos al efecto de que el pago bajo protesta era uno de los requisitos jurisdiccionales para que esta Corte pudiera revisar una decisión del Tribunal de Contribuciones. Resolvimos que el silencio absoluto de la Ley núm. 169 sobre esta cuestión no era suficiente indicación de la intención de la Legislatura para derogar dicho requisito; y que por tanto todavía está en vigor. En su consecuencia, la sección 76(a) debe leerse conjuntamente con la Ley núm. 169 por aquellos que soliciten de esta Corte la revisión de decisiones del Tribunal de Contribuciones.

Pero aquí, alega la peticionaria, la Ley núm. 169 no guarda silencio en cuanto al requisito de la fianza por las tres cuartas partes exigida por la sección 57(a) de la Ley de Contribuciones sobre Ingresos para que el Tribunal de Contribuciones revise una resolución del Tesorero. Su argumento consiste en que la disposición arriba citada de la sección 3 de la Ley núm. 169 establece otro procedimiento a seguirse por el Tesorero para asegurar el cobro definitivo de la contribución que incluye, de ser necesaria, una fianza a

ser fijada por el Tribunal de Contribuciones a discreción; por tanto afirma que esta disposición, por implicación, deroga la disposición de la fianza de tres cuartas partes de la sección 57(a), toda vez que de hecho es inconsistente con la misma.

No podemos convenir con esta contención. Al igual que en el caso del requisito del pago bajo protesta de conformidad con la sección 76(a) para poder recurrir a este Tribunal, la Ley núm. 169 nada contiene que revele la intención de parte de la Legislatura para eximir al contribuyente del requisito de la fianza de tres cuartas partes de la sección 57 (a). Nos es difícil comprender el alcance exacto del disponiéndose de la sección 3 de la Ley núm. 169 en que descansa la peticionaria. Pero creemos innecesario en este caso resolver cuál es su significado exacto y su propósito. Sólo tenemos que manifestar que tal lenguaje indirecto no puede interpretarse como que deroga *por implicación* el requisito específico de la fianza de tres cuartas partes contenido en la sección 57(a). Creemos que es nuestro deber dejar en vigor esta importante disposición de la sección 57(a) hasta que la Legislatura expresa y directamente manifieste su intención sobre la cuestión. Toda vez que la parte citada de la sección 3 de la Ley núm. 169 de su faz no tiene relación alguna con la disposición de la sección 57(a) en cuanto a la fianza de tres cuartas partes, resolvemos que todavía está en vigor este requisito para que el Tribunal de Contribuciones pueda revisar la resolución del Tesorero en cuanto a una deficiencia.(¹)

Sin embargo, todavía existe en este caso un factor adicional. Poco después de haber entrado en vigor la Ley núm. 169 de 1943, el Tribunal de Contribuciones resolvió en

(¹) Un comentarista, abogado de intereses privados, quien no hubiera estado inclinado a favorecer este resultado de poderse éste evitar lógicamente, llega a la misma conclusión. E. Córdova Díaz, Procedimiento a seguirse para revisar notificaciones ante el Tribunal de Contribuciones de P.R., La Toga, Octubre 31, 1944, pág. 6.

dos opiniones, fechadas el 27 de octubre de 1943, y el 16 de noviembre de 1943, que ya no era necesaria la radicación de la referida fianza de tres cuartas partes. Dichos casos nunca vinieron ante este Tribunal. Más tarde, descansando en dichas decisiones, la peticionaria radicó, el 17 de junio de 1944, su querella ante el Tribunal de Contribuciones sin la fianza. Pero el 27 de febrero de 1945, el Tribunal de Contribuciones, después de verificarse un cambio en sus miembros, se revocó a sí mismo en otro caso, resolviendo que era necesaria la fianza. De conformidad con esta nueva decisión, desestimó, por falta de jurisdicción, el presente caso y otros más.

Nos parece que bajo estas circunstancias peculiares sería manifiestamente injusto si resolviéramos que a los contribuyentes que de buena fe descansaron en la posición del Tribunal de Contribuciones, que nunca se impugnó aquí por el Tesorero y que fué cambiada *sua sponte* por el Tribunal de Contribuciones, se les prive a última hora de una vista en los méritos. No podemos hacer nuestra tan deportiva teoría de justicia, bajo la cual las decisiones de una corte pueden emplearse para atrapar a los no precavidos, o aun a los precavidos.

Afortunadamente, hay una teoría legal a mano que creemos puede aplicarse a este caso; es decir, la regla de que aquéllos que han obtenido derechos de propiedad o de contratos, descansando en una decisión de una corte de última instancia, pueden bajo ciertas circunstancias ser protegidos en sus derechos, no obstante la revocación posterior de la decisión en cuestión. *A. Cuesta & Cía.* v. *Tesorero,* 54 D. P.R. 87; *F. Olazábal & Cía.* v. *Corte de Distrito,* 63 D.P.R. 928.

Reconocemos que esta regla se aplica generalmente sólo cuando la decisión invocada provenga de una corte de última instancia. Por ejemplo, nadie puede descansar en una decisión de una corte de distrito Federal. *Calaf* v. *Gonzá-*

*lez*, 127 F.2d 934, 938 (C.C.A. 1st, 1942). De la misma manera, una decisión de una de nuestras cortes de distrito insulares no podría tener este efecto. Pero aquí tenemos un Tribunal(²) para toda la Isla que se especializa en litigación contributiva, sobre la que tiene jurisdicción exclusiva. Bajo ese sistema, el Tribunal de Contribuciones anunció una regla de procedimiento y de jurisdicción sobre una cuestión dudosa, regla que fué seguida durante dieciséis meses, induciendo a los contribuyentes a descansar en la misma. En verdad, si un contribuyente hubiera ofrecido una fianza durante dicho período, indudablemente ésta habría sido rechazada. Si bien el caso no es enteramente aplicable, los mismos elementos de justicia (*fair play*) que nos indujeron recientemente a no permitir al Tesorero imponer penalidades por no haberse pagado contribuciones por muchos años anteriores durante los cuales sus predecesores habían resuelto administrativamente que dichas contribuciones no se debían (*Puerto Rico Ilustrado, Inc.* v. *Buscaglia, Tes.*, 64 D.P.R. 914), dictan en este caso un resultado similar.

Ahora que el Tribunal de Contribuciones ha cambiado su regla, y hemos convenido con la última versión, el principio establecido en los casos de *Cuesta* y *Olazábal* sería mejor cumplido aquí permitiendo a aquellos contribuyentes que descansaron en la primera decisión del Tribunal de Contribuciones, que radiquen ahora una fianza de tres cuartas partes. Con ello el Tesorero no se perjudica en estos casos, y

---

(²)No encontramos méritos en la contención de que la doctrina en el caso de *Cuesta* no es de aplicación aquí, porque el Tribunal de Contribuciones no es una "corte". El Juez Magruder, en una opinión de la Corte de Circuito de Apelaciones para el Primer Circuito, ha dicho en *Pelham Hall Co.* v. *Hassett*, 147 F.2d 63, 66, que "Desde su reorganización por la Ley de Rentas de 1926, las decisiones de la Junta (ahora llamada de nuevo Tribunal de Contribuciones de los Estados Unidos) han sido esencialmente judiciales en carácter; y ahora está bien establecido que sus decisiones son base para *res judicata, hayan sido o no revisadas por una corte.* (Citando casos)." (Bastardillas nuestras). La sección 3 de la Ley núm. 169 dispone que nuestro Tribunal de Contribuciones "funcionará con carácter cuasi judicial". A los fines del presente caso, ciertamente es una "corte".

se advierte a los futuros litigantes que deben prestar tales fianzas dentro del término prescrito por la ley. Y no vemos fin práctico en discutir la cuestión de si la radicación *nunc pro tunc* de tales fianzas está permitida por la ley. Aquí las fianzas tendrán la fecha de su radicación. Esto se permite bajo la doctrina de *Cuesta* y *Olazábal* y no como una actuación *nunc pro tunc*.

Queremos enfatizar el hecho de que en manera alguna estamos resolviendo que la doctrina del caso de *Olazábal* se aplica a decisiones del Tribunal de Contribuciones sobre cuestiones de derecho sustantivo, con o sin apelaciones de las mismas. Tampoco resolvemos que en el caso ordinario no es fatal el dejar de radicar en tiempo la fianza de tres cuartas partes. Nuestra decisión se limita a los hechos del presente caso.

*La decisión del Tribunal de Contribuciones será revocada y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*