González Padín Co., Inc., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Rafael A. Buscaglia, Tesorero, interventor.

Núm. 111.—*Sometido:* Marzo 10, 1947. *Resuelto:* Abril 22, 1947.

222

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la peticionaria; *Hon. Procurador General Interino Luis Negrón Fernández* y *J. B. Fernández Badillo, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Padín radicó una querella ante el Tribunal de Contribuciones contra una deficiencia del Impuesto de la Victoria. El Tribunal de Contribuciones desestimó la petición por falta de jurisdicción. En el recurso de *certiorari* número 76 revocamos al Tribunal de Contribuciones y le ordenamos que viera el caso en los méritos. 66 D.P.R. 24. Padín no pagó la contribución bajo protesta antes de recurrir ante este Tribunal, y el Tesorero no alegó que por ese motivo carecíamos de jurisdicción.

Más tarde, el Tribunal de Contribuciones celebró una vista y nuevamente desestimó la petición, esta vez en los méritos. Padín pagó la deficiencia bajo protesta y radicó el *certiorari* número 111, cuyo auto expedimos, para revisar esta segunda decisión. El Tesorero ha solicitado la desesti-

mación de este segundo recurso. Alega que nunca obtuvimos jurisdicción en el número 76, porque Padín no pagó la contribución bajo protesta antes de invocar la jurisdicción de esta Corte. De conformidad con el Tesorero, toda vez que nunca tuvimos jurisdicción, nuestra decisión en el número 76 era nula. Concluye entonces que la decisión del Tribunal de Contribuciones sobre los méritos del caso, dictada de conformidad con nuestro mandato en el número 76 y cuya revisión Padín solicita ahora en el número 111, era nula también. Su posición es que la decisión original del Tribunal de Contribuciones desestimando la petición por falta de jurisdicción está todavía en vigor, porque no teníamos jurisdicción para anularla en el recurso número 76. En su consecuencia solicita que anulemos el auto expedido en el número 111.

■ Padín alega que aun suponiendo que no teníamos jurisdicción en el número 76 y que nuestra decisión en dicho recurso es por tanto nula, la decisión original del Tribunal de Contribuciones desestimando la querella por falta de jurisdicción, revocada por nosotros en dicho recurso, ya no está en vigor. Padín contiende que aun sin un mandato válido nuestro, deberíamos presumir que el Tribunal de Contribuciones estaba convencido·por los fundamentos de nuestra opinión en el número 76 y por tanto corrigió su error a iniciativa propia, dejando sin efecto su decisión original, celebrando una vista y dictando una nueva decisión sobre los méritos.

Sin embargo, aparte de la difícil cuestión del poder del Tribunal de Contribuciones para modificar a iniciativa propia su decisión original mucho después de haber sido rendida, no atañe a este Tribunal especular en cuanto a si el Tribunal de Contribuciones habría cambiado su decisión original si no se hubiera sentido obligado a así hacerlo en virtud de nuestro mandato en el número 76, que nunca el Tesorero atacó hasta que radicó la presente moción solicitando la desestimación del recurso número 111. "Según un anti-

guo juez inglés, 'el propio diablo desconoce la mente humana,' y una moderna corte de apelación no está en mejores condiciones para poner de manifiesto los procesos mentales no revelados." *National Lab. Rel. Bd.* v. *Donnelly Garment Co.,* \_\_\_ U.S. \_\_\_, \_\_\_, 91 L. ed. 673, 679. Por tanto forzoso es concluir que si presumiéramos que nuestra jurisdicción original en el número 76 es nula, esto conlleva el corolario de que cualquier actuación llevada a cabo de conformidad con su mandato ante el Tribunal de Contribuciones es también nula.

■ Padín seguidamente alega que teníamos jurisdicción en el número 76. Su contención aquí es que la sección 76(*a*) de la Ley de Contribuciones sobre Ingresos dispone la revisión mediante certiorari especial solamente si el Tribunal de Contribuciones determina una deficiencia; que en su primera decisión el Tribunal de Contribuciones no determinó una deficiencia, sino que sencillamente resolvió que carecía de jurisdicción para determinar si había o no una deficiencia; que no existe un remedio especial para revisar tal decisión; que nuestro auto en el número 76 no era por tanto un certiorari especial, que exige el pago bajo protesta, sino un auto de certiorari clásico expedido a tenor con los arts. 670 y 671 del Código de Enjuiciamiento Civil, que no exigen el pago bajo protesta; que el Tesorero, al no solicitar la desestimación del recurso número 76 por falta de jurisdicción, asumió la posición correcta de la ley; y por tanto que teníamos jurisdicción para emitir nuestra decisión en el número 76 tal y como aparece publicada en 66 D.P.R. 24.

Para poder resolver que el auto expedido en el número 76 era uno clásico, tendríamos que decidir (1) que el Tribunal de Contribuciones es una "corte" dentro del significado del artículo 670, *cf. Mayagüez Lt. P. & I. Co.* v. *Tribunal de Contribuciones,* 65 D.P.R. 30, 36, nota 2; y (2) que la Legislatura no tuvo la intención de hacer exclusivo el remedio de certiorari especial, provisto en la Ley de Contribuciones sobre Ingresos y en la Ley número 169, Leyes de Puerto

Rico, 1943, para revisar las decisiones del Tribunal de Contribuciones.

Sin embargo, no es necesario que consideremos estas dos cuestiones. Una decisión final del Tribunal de Contribuciones puede ser revisada por nosotros mediante el certiorari especial provisto en la sección 5 de la Ley número 169. Y la decisión del Tribunal de Contribuciones en el recurso número 76, desestimando la querella por falta de jurisdicción, ciertamente era final y por tanto revisable por este Tribunal mediante tal certiorari especial. Véanse *Mayagüez Sugar Co. v. Tribunal de Apelación de Contribuciones,* 60 D.P.R. 753; *Ballester v. Tribunal de Apelación de Contribuciones,* 60 D.P.R. 768. Por tanto, el único problema consiste en si un contribuyente, para poder obtener la revisión ante este Tribunal de tal decisión, debe pagar bajo protesta la deficiencia.

■ En *Clínica Díaz García v. Tribunal de Contribuciones,* 65 D.P.R. 94, la peticionaria sostuvo en su alegato que la sección 76(*a*) de la Ley de Contribuciones sobre Ingresos exige el pago bajo protesta para poder invocar la jurisdicción de este Tribunal solamente cuando "un contribuyente no estuviere conforme con la deficiencia . . . determinada" por el Tribunal de Contribuciones; que cuando el Tribunal de Contribuciones se niega a asumir jurisdicción, no "determina" una deficiencia; y por tanto que en el último caso tal decisión es revisable por este Tribunal mediante el certiorari especial sin necesidad de pagar bajo protesta. Indicó la peticionaria en dicho caso que si revocábamos al Tribunal de Contribuciones ordenándole que asumiera jurisdicción, y en la nueva vista el Tribunal de Contribuciones de hecho "determinaba" una deficiencia, entonces se podía invocar la revisión por este Tribunal solamente si se pagaba bajo protesta, de conformidad con la sección 76(*a*). El Tesorero no expuso argumento en contrario en su alegato, y asumimos jurisdicción y procedimos a considerar los méritos de la cuestión que se nos planteó. Aun cuando, contrario al

caso de *Díaz García*, ninguna de las partes expuso argumento alguno sobre esta cuestión en el recurso 76, de igual manera consideramos dicho recurso y lo resolvimos. El Tesorero, quien no se opuso al argumento afirmativo de la peticionaria en el caso de *Díaz García*, y quien se avino a nuestra actuación al considerar el recurso número 76, sostiene ahora que ambos casos fueron erróneamente resueltos sobre esta cuestión. No estamos conformes y ahora hacemos explícitas nuestras implícitas conclusiones en dichas dos decisiones, al efecto de que cuando el Tribunal de Contribuciones desestima un recurso que envuelve una deficiencia de contribuciones sobre ingresos, por falta de jurisdicción, no es necesario el pago de la deficiencia bajo protesta, para poder llegar a este Tribunal mediante el certiorari especial con el fin de revisar la cuestión jurisdiccional.

Nada encontramos en contrario en el estatuto y en los casos federales. Bajo la sección 76(a) de nuestra Ley, este Tribunal tiene jurisdicción solamente si se paga bajo protesta una deficiencia "determinada" por nuestro Tribunal de Contribuciones. *Bonet* v. *Yabucoa Sugar Co.*, 306 U.S. 505. Para obtener la revisión de una decisión de la Corte Contributiva Federal ante la Corte de Circuito de Apelaciones, no se necesita el pago bajo protesta; pero si el contribuyente quiere suspender el cobro de una deficiencia "determinada" por la Corte Contributiva Federal mientras la revisión esté pendiente ante la Corte de Circuito de Apelaciones, debe prestar una fianza. 26 U.S.C.A., sección 1145. Entonces surge la cuestión de si debe prestarse tal fianza para suspender el cobro mientras la Corte de Circuito de Apelaciones revisa una decisión en la que la Corte Contributiva Federal no "determina" una deficiencia, sino que desestima una petición del contribuyente por falta de jurisdicción.

Lo mismo que en nuestro sistema, la desestimación por la Corte Contributiva Federal de un procedimiento por falta de jurisdicción, constituye una decisión revisable por la

Corte de Circuito de Apelaciones. *Michael* v. *Commissioner of Internal Revenue,* 56 F.2d 825 (C.C.A. 2, 1932); 9 Mertens, *Law of Federal Income Taxation,* sección 51.18, págs. 393-4. Si bien no hemos encontrado ningún caso federal perfectamente aplicable, tal desestimación por falta de jurisdicción no parece ser la "determinación" de una deficiencia de la Corte Contributiva Federal que requiere la prestación de una fianza a tenor con la sección 1145, para evitar el cobro mientras esté pendiente de revisión ante la Corte de Circuito de Apelaciones. El Título 26 U.S.C.A., sección 1117(c) parece en armonía con esta conclusión. Dispone que una decisión de la Corte Contributiva Federal (excepto una decisión desestimando un procedimiento por falta de jurisdicción) será considerada como dictada el día en que se expida una resolución especificando el importe de la deficiencia; por otro lado, si la Corte Contributiva Federal desestima un procedimiento por falta de jurisdicción, la decisión de la Corte Contributiva Federal se considera como dictada el día en que se expida la resolución desestimando por falta de jurisdicción. *Cf. Uncasville Mfg. Co.* v. *Commissioner of Internal Revenue,* 55 F.2d 893 (C.C.A. 2, 1932); 9 Mertens, *supra,* sección 51.18, nota 17, pág. 394.

Recientemente resolvimos que debe radicarse un nuevo cómputo antes de poderle dar carácter de final a una decisión del Tribunal de Contribuciones enteramente adversa a un contribuyente. *Buscaglia* v. *Tribunal de Contribuciones, Arcelay, interventor,* ante, pág. 13. Pero toda vez que aquí resolvemos que el contribuyente no tiene que pagar bajo protesta para obtener la revisión ante este Tribunal de una decisión del Tribunal de Contribuciones desestimando por falta de jurisdicción una querella impugnando una deficiencia de contribuciones sobre ingresos, tal decisión es final sin el nuevo cómputo.

█ En vista del resultado a que hemos llegado, no tenemos que determinar si convendríamos con el siguiente argumento: Este no es un caso como el de *Casanovas & Cía.,*

*Sucrs., Inc.* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 653, donde descubrimos que no teníamos jurisdicción antes de cerrarse el caso y *motu proprio* lo desestimamos por falta de jurisdicción. Tampoco se alega aquí que carecíamos de jurisdicción sobre las partes o sobre la materia envuelta. Más bien, la contención aquí es que no existió en el recurso número 76 un hecho jurisdiccional. Teníamos jurisdicción para determinar dicho hecho jurisdiccional, y por tanto para determinar si teníamos o no jurisdicción. Por nuestra decisión en el número 76 implícitamente determinamos dicho hecho a favor de Padín. El Tesorero pudo pero no impugnó dicha conclusión. No puede ahora litigarse de nuevo aun cuando nuestra decisión original sobre dicha cuestión pudo haber sido errónea. Véanse *Restatement, Judgments,* sección 10, incluyendo el comentario *c* a la página 62; *United States* v. *John L. Lewis,* ___ U.S. ___, 91 L. ed. 595, 614, nota 57, opinión concurrente del Juez Frankfurter, páginas 623–24; *Angel* v. *Bullington,* ___ U.S. ___, 91 L. ed. 557; *Treinies* v. *Sunshine Min. Co.,* 308 U.S. 66; *Stoll* v. *Gottlieb,* 305 U.S. 165; *Chicago Life Ins. Co.* v. *Cherry,* 244 U.S. 25; *Baldwin* v. *Traveling Men's Assn.,* 283 U.S. 522; *American Surety Co.* v. *Baldwin,* 287 U.S. 156; *Des Moines Nav. Co.* v. *Iowa Homestead Co.,* 123 U.S. 552; *Yakus* v. *United States,* 321 U.S. 414, 472–73, nota 23, opinión disidente del Juez Rutledge; Scott, *Collateral Estoppel by Judgment,* 56 Harv. L. Rev. 1, 18, nota 38; Medina, *Conclusiveness of Rulings on Jurisdiction,* 31 Col. L. Rev. 238; 26 Ill. L. Rev. 432; Gavit, *Jurisdiction of the Subject Matter and Res Judicata,* 80 U. of Pa. L. Rev. 386; Stumberg, *Conflict of Laws,* págs. 80, 110 *Cf. Avellanet v. Porto Rican Express Co.,* 64 D.P.R. 693.[1]

*Se declarará sin lugar la moción de desestimación.*

El Juez Asociado Sr. Marrero no intervino.

[1] Si conviniéramos con el argumento expuesto en nuestro último párrafo, surgiría una cuestión subsidiaria, que encontramos innecesario también determinar aquí: Sería nuestra actuación en el número 76 *res judicata* en la teoría

de que el Núm. 76 y el Núm. 111 son casos "diferentes"; o sería la ley del caso, *Olmedo* v. *Rivera*, 65 D. P. R. 49, 56, en la teoría de que el número 76 y el número 111 son un mismo caso que envuelve la misma controversia en etapas diferentes? *Cf. National Lab. Rel. Bd.* v. *Donnelly Garment Co.*, supra.