WILLIAM IRIZARRY CUEBAS, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, interventor.

Núms. 221 y 223. *Sometidos:* Enero 12, 1950. *Resueltos:* Abril 6, 1950.

*J. Alemañy Sosa,* abogado del peticionario; *Hon. Procurador General Vicente Géigel Polanco* y *Elmer Toro Lucchetti, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

En marzo 13, 1940 William Irizarry Cuebas radicó su planilla de contribución sobre ingresos para el año 1939, declarando un ingreso de $6,886.45. En septiembre 24, 1945 el Tesorero notificó al contribuyente una deficiencia de $3,626.62, sin imponerle penalidad alguna. La notificación indicaba que en 1939 Irizarry había hecho depósitos bancarios ascendentes a $60,684.53, de los cuales no habían podido identificarse $55,948.86; y que el Tesorero creía que la mitad de dicha suma—$27,974.43—constituía ingreso no declarado procedente de la manipulación por Irizarry de un juego de bolita.[1]

En octubre 15, 1945 el contribuyente solicitó la reconsideración en cuanto a la deficiencia de $3,626.62. En octubre 22, 1945 radicó también una querella ante el Tribunal de

---

[1] Véase *Pueblo* v. *Irizarry,* 57 D.P.R. 186.

Contribuciones impugnando esta deficiencia. No obstante el hecho de que la moción de reconsideración no fué radicada dentro del término de quince días provisto en la sección 57 (a) de la Ley de Contribuciones sobre ingresos, el Tesorero la tomó en consideración y celebró una vista administrativa. En noviembre 27, 1945, como resultado de la vista, el Tesorero notificó a Irizarry una deficiencia de $9,368.11. Esta vez la teoría del Tesorero era que la cantidad de $39,011.41 no había sido identificada y la misma constituía ingreso tributable. En adición y por primera vez el Tesorero le impuso una penalidad por fraude.

En diciembre 26, 1945 el contribuyente radicó una "querella complementaria" ante el Tribunal de Contribuciones. Después de trámites ulteriores que no vienen al caso señalar ahora, el Tribunal de Contribuciones desestimó el recurso por falta de jurisdicción. Resolvió que la notificación por los $9,368.11 era una nueva deficiencia, y que no era por lo tanto la decisión administrativa final que se requiere para que pueda adquirir jurisdicción el Tribunal de Contribuciones, de conformidad con la sección 57 (a) y la sección 4 de la Ley núm. 169, Leyes de Puerto Rico, 1943 (pág. 601). Confirmamos la decisión del Tribunal de Contribuciones en diciembre 23, 1947 en el caso de *Irizarry* v. *Tribunal de Contribuciones*, 67 D.P.R. 953.

Sin embargo, señalamos en nuestra opinión que el Tesorero había informado erróneamente al contribuyente en la deficiencia de $9,368.11 que en caso de que no estuviere conforme, podía radicar una querella ante el Tribunal de Contribuciones según dispone la ley, siempre y cuando que prestara la fianza exigida por la sección 57. Expusimos por lo tanto nuestro punto de vista de que bajo todas las circunstancias el contribuyente había sido inducido a error y que por lo tanto el Tesorero debía (pág. 960) "notificarle de nuevo al contribuyente la deficiencia que por error le notificó como resolución administrativa, y entonces el peticionario podrá solicitar la reconsideración y la vista administrativa correspondiente.

Es obligación del Tesorero así hacerlo, ya que fué él quien indujo al contribuyente a cometer el error que privó al tribunal inferior de jurisdicción para conocer de su caso."

Consideraremos ahora los incidentes que dieron lugar al presente recurso. En vista de lo anteriormente expuesto, el Tesorero se preocupó porque el término de siete años podía transcurrir antes de que la deficiencia fuera tasada.([2]) Por lo tanto en marzo 6, 1947 hizo una tasación de emergencia de dicha deficiencia a tenor con la sección 57(c) de la Ley de Contribuciones sobre Ingresos. Entonces el contribuyente radicó una querella en el Tribunal de Contribuciones siguiendo el procedimiento señalado en la sección 62 de la Ley. Después que el Tesorero contestó, Irizarry solicitó sentencia por las alegaciones. El Tribunal de Contribuciones no solamente denegó dicha moción, sino que dictó sentencia en favor del Tesorero. Expedimos el auto de *certiorari* para revisar esta decisión.

■ La primera cuestión a resolver es si el Tesorero estaba autorizado para hacer una tasación de emergencia bajo las circunstancias de este caso. La sección 57(a) de la Ley dispone que si el Tesorero creyere que existe una deficiencia notificará al contribuyente, a quien se concede oportunidad de discutirla administrativa y judicialmente. La sección 57(b) instrumenta la 57(a). Provee para las distintas situaciones en que, tan pronto el contribuyente es notificado de la deficiencia bajo la sección 57(a), el Tesorero de ordinario puede imponer y cobrar la contribución. La sección 57(b) según ha sido enmendada por la sección 6 de la Ley núm. 23, Leyes de Puerto Rico, 1941, Sesión Extraordinaria (pág. 73), prescribe como sigue:

"Cuando el contribuyente no radicare solicitud de reconsideración, o cuando radicada y resuelta dicha solicitud no recurriere al Tribunal de Apelación de Contribuciones de Puerto Rico, en ambos casos dentro de los términos y en la forma que establece

---

([2]) Véase la sección 60(a)(1) de la Ley de Contribuciones Sobre Ingresos; *Buscaglia* v. *Tribl. de Contribuciones,* 67 D. P.R. 693.

la subdivisión (a) que antecede, el Tesorero procederá a imponer y cobrar la deficiencia por él determinada, con intereses a razón del seis (6) por ciento anual sobre dicha deficiencia, desde la fecha prescrita para el pago del primer plazo de la contribución. Cuando habiéndose recurrido para ante el Tribunal de Apelación de Contribuciones de Puerto Rico en la forma dispuesta por esta Ley, dicho tribunal determinare que existe una deficiencia, la cantidad determinada por el Tribunal será impuesta por el Tesorero con intereses a razón del seis (6) por ciento anual desde la fecha prescrita para el pago del primer plazo de la contribución, y deberá ser totalmente satisfecha por el contribuyente a requerimiento del Tesorero."(³)

Así vemos que bajo el procedimiento ordinario, cuando un contribuyente es notificado de una deficiencia bajo la sección 57 (a), puede ocurrir lo siguiente: (1) el contribuyente no solicite la reconsideración dentro de quince días; (2) el contribuyente puède que solicite la reconsideración, el Tesorero por decisión administrativa confirme la deficiencia y el contribuyente no recurra al Tribunal de Contribuciones; (3) el contribuyente solicite la reconsideración, el Tesorero por decisión administrativa confirme la deficiencia después de una vista, el contribuyente se querelle en el Tribunal de Contribuciones *y éste determine que existe una deficiencia.* El Tesorero debe esperar el resultado de una de estas tres alternativas antes de que pueda imponer y cobrar la deficiencia bajo la sección 57 (b).

██ En el presente caso, como hemos visto, originalmente el Tesorero notificó la deficiencia a Irizarry bajo el procedimiento ordinario conforme a la sección 57 (a). El contribuyente no solicitó la reconsideración dentro de quince días. Por consiguiente, el Tesorero pudo haber procedido inmediatamente a imponer y cobrar la deficiencia. Pero en vez de eso, prefirió considerar la moción de reconsideración presentada por Irizarry veintiún días después de haber sido notificado de esta deficiencia. Como resultado de la vista

---

(³) Las secciones 57 (a) y (b) fueron enmendadas por la Ley núm. 230, Leyes de Puerto Rico, 1949 ((1) pág. 707), con posterioridad a la fecha de la presente tasación de emergencia y no afectan este caso.

celebrada le envió una nueva deficiencia. Hemos resuelto (1) que esta nueva deficiencia inició el procedimiento de nuevo, quedando sin efecto todo lo actuado con anterioridad a ella; y (2) que como consecuencia de ello cuando el contribuyente radicó la querella en el Tribunal de Contribuciones impugnando la nueva deficiencia sin solicitar la reconsideración del Tesorero, el Tribunal de Contribuciones carecía de jurisdicción. *Irizarry* v. *Tribunal de Contribuciones*, supra. Pero en ningún momento en el procedimiento dicho Tribunal determinó una deficiencia a tenor con la sección 57 (b). (⁴) Y en efecto ordenamos al Tesorero notificar una nueva deficiencia debido a la información errónea contenida en la deficiencia de $9,368.11.

 Los hechos anteriores demuestran que en este estado del procedimiento todavía no se había tasado deficiencia alguna. Y como el término de siete años para tal tasación, provisto en la sección 60 (a) (1), expiraría en marzo 13, 1947, el Tesorero hizo una tasación de emergencia en marzo 6, 1947 bajo la sección 57 (c) y el contribuyente acudió al Tribunal de Contribuciones de conformidad con la sección 62.

El nervio del argumento del contribuyente es que el Tesorero no puede hacer una tasación de emergencia cuando la deficiencia, como en este caso, había sido notificada con arreglo a la sección 57 (a), mucho más cuando como aquí, el Tribunal de Contribuciones había dictado ya una resolución.

La sección 57 (c), según ha sido enmendada por la sección 6 de la Ley núm. 23, Leyes de Puerto Rico, 1941, Sesión Extraordinaria, provee como sigue:

"Si el Tesorero creyere que la tasación o cobro de una deficiencia ha de ser comprometida por la demora, inmediatamente

---

(⁴) Aun Irizarry tenía conocimiento de esto. Radicó su solicitud de certiorari en este Tribunal en el caso reportado en 67 D.P.R. 953, sin pagar ninguna contribución bajo protesta, precisamente porque el Tribunal de Contribuciones no había determinado una deficiencia. Esto se hizo de acuerdo con los casos de *González Padín Co.* v. *Tribl. de Contribuciones*, 67 D.P.R. 221; *Clínica Díaz García* v. *Tribunal Contribuciones*, 65 D.P.R. 95.

tasará dicha deficiencia y hará la notificación y requerimiento para el pago de la misma. En tal caso podrá hacerse la tasación (1) sin el aviso provisto en la subdivisión (a) de esta sección, o (2) antes del vencimiento de los quince (15) días que concede dicha subdivisión (a) para radicarse una solicitud de reconsideración, o (3) en cualquier momento anterior a resolverse la solicitud de reconsideración que hubiere podido radicarse, o (4) antes del vencimiento de los treinta (30) días siguientes a la fecha en que se resuelva la solicitud de reconsideración, concedidos por dicha subdivisión (a) para recurrir al Tribunal de Apelación de Contribuciones de Puerto Rico, o (5) en cualquier momento anterior a la resolución del Tribunal de Apelación de Contribuciones, si el contribuyente hubiere recurrido a éste. Si el contribuyente no reclamare reducción alguna según lo dispuesto en la sección 62, la deficiencia así tasada (o si la reclamación de ese modo presentada fuere por sólo una parte de la deficiencia, entonces la cantidad no incluída en la reclamación) se pagará mediante notificación y requerimiento del Tesorero."

La primera oración de la sección 57 (c) otorga plenos poderes al Tesorero para *tasar* una deficiencia, según ésta se distingue de su mera notificación, si cree que las circunstancias lo justifican. Como dijimos en *Ballester* v. *Tribl. de Apelación*, 60 D.P.R. 768, 773, corrientemente las cortes "no pueden intervenir en la actuación del Tesorero al hacer un *jeopardy assessment.*"

Sin embargo, el contribuyente alega que la sección 57 (c) establece cinco situaciones en las cuales puede hacerse una tasación de emergencia y que el presente caso no cae bajo ninguna de ellas. Por otro lado el Tesorero sostiene lo siguiente: las cinco situaciones provistas en la sección 57 (c) son meramente términos durante los cuales el Tesorero no puede actuar bajo la sección 57 (b). Pero esto no significa que el Tesorero esté limitado a hacer una tasación de emergencia solamente durante dichos períodos. Por el contrario, la primera oración de la sección 57 (c) es abarcadora en sus disposiciones y claramente demuestra la intención de parte de la Legislatura de autorizar tasaciones de emergencia *siempre que sean necesarias* "en aquellas situaciones de emer-

gencia como la fuga inminente del contribuyente, la disposición por él de su propiedad, o el vencimiento del período de prescripción." *Ballester* v. *Tribl. de Apelación*, supra, pág. 774. Por consiguiente, aun si la presente tasación de emergencia no fué hecha durante una de las cinco etapas provistas en la sección 57 (c), la misma no puede ser atacada.

No es necesario resolver en este caso si estamos de acuerdo con el contribuyente o con el Tesorero en cuanto al alcance de la sección 57 (c). *Cf.* 9 Mertens, *Law of Federal Income Taxation*, secs. 49.105–49.110, págs. 91–97, sec. 50.16, págs. 210–11. Aun cuando el argumento del peticionario de que una tasación de emergencia debe hacerse durante una de las cinco situaciones se tenga por correcto, esta tasación de emergencia no fué impropia. Irizarry alega que la presente tasación de emergencia fué expedida *después* de la resolución del Tribunal de Contribuciones. Pero la orden que contempla la sección 57 (c) (5) es una resolviendo el caso en sus méritos; tal resolución, si es en favor del Tesorero, requiere al contribuyente que pague la deficiencia antes de que pueda recurrir a este Tribunal.([5]) Si la sección 57 (c) (5) contemplara otras resoluciones que no fueran en los méritos, tendríamos una situación absurda. Bajo la teoría del peticionario, una tasación de emergencia no podría hacerse bajo la sección 57 (c) (5) porque el Tribunal de Contribuciones ya había dictado una "resolución", no obstante ser una declarándose sin jurisdicción. Pero el Tesorero en igual forma no podía imponer y cobrar la deficiencia bajo la sección 57 (b) porque dicha sección provee que el Tribunal de Contribuciones debe *determinar una deficiencia* para que ella sea aplicable. No podemos decir que la Legislatura tuviera por miras semejante

---

([5]) La sección 57 (c) (5) fué enmendada por la Ley núm. 230, Leyes de Puerto Rico, 1949, la cual entró en vigor después que este caso surgió, para que leyera de la manera siguiente: ". . . (5) en cualquier momento antes de la resolución del Tribunal de Contribuciones de Puerto Rico, *sobre los méritos del caso* si el contribuyente hubiere apelado para ante éste." (Bastardillas nuestras.) Hemos obtenido igual resultado bajo el anterior estatuto; pero esta enmienda elimina en el futuro cualquier posible duda en cuanto al problema.

resultado tan absurdo; es decir, que la deficiencia no podía jamás ser tasada.

Aquí el Tribunal de Contribuciones no dictó resolución en los méritos. Por el contrario, la resolución de dicho Tribunal, confirmada por nosotros, rehusó oír el caso por falta de jurisdicción. Y como ya hemos dicho, en 67 D.P.R. a la pág. 960 en efecto ordenamos al Tesorero, en vista de que la deficiencia de $9,368.11 inducía a error, que empezara de nuevo todo el procedimiento y notificara al contribuyente otra nueva deficiencia. Más bien, el Tesorero hizo una tasación de emergencia. Claramente podía hacer esto bajo la sección 57(c)(1). Por consiguiente, la presente tasación de emergencia era válida bajo la sección 57(c)(1), aunque se requiera que se ajuste a una de las cinco situaciones provistas en la sección 57(c).([6])

El contribuyente alega que el permitir al Tesorero hacer una tasación de emergencia en este caso le priva de su derecho a obtener la revisión por este Tribunal de una resolución final del Tribunal de Contribuciones sobre una deficiencia notificádale antes de la tasación de emergencia. La mejor contestación a este argumento es lo que ha sucedido en este caso. Después que el contribuyente recibió la tasación de emergencia procedió de conformidad con la sección 62, la cual le confiere derecho a recurrir al Tribunal de Contribuciones y luego a este Tribunal. Y como se verá más adelante estamos devolviendo este caso para que se resuelva en sus méritos la alegada responsabilidad de Irizarry por la suma fijada en la tasación de emergencia.

■ Resta resolver si el Tribunal de Contribuciones actuó correctamente al dictar sentencia en los méritos a favor del

---

([6]) Al finalizar nuestra opinión en 67 D.P.R. 953 ordenando en efecto al Tesorero notificar una nueva deficiencia, señalábamos que si la planilla era fraudulenta, como alegaba el Tesorero, el período prescriptivo de siete años de la sección 60(a)(1) no impediría la deficiencia. Pero esto difícilmente puede interpretarse, según alega el peticionario, como que impide una tasación de emergencia durante el período de siete años.

Tesorero al considerar la moción del contribuyente solicitando sentencia por las alegaciones.

Estamos de acuerdo con el Tesorero en que si una parte presenta una moción solicitando sentencia por las alegaciones, el tribunal debe estudiar todo el récord y dictar sentencia en favor de cualquier parte que sea acreedora a ella. Regla 12c, Reglas de Enjuiciamiento Civil; *Motion for Judgment on the Pleadings*, 3 Fed. Rules Service 676. Pero una moción sobre sentencia por las alegaciones no puede resolverse en favor de ninguna de las partes si de las mismas surge una genuina controversia de hecho. *Boulon* v. *Pérez*, 70 D.P.R. 988; *Hettinger & Co.* v. *Tribunal de Distrito*, 69 D.P.R. 137; *Fernández Antonetti* v. *Corte*, ante pág. 161. Y aquí la querella claramente demuestra que, además de atacar la autoridad del Tesorero para hacer una tasación de emergencia, el contribuyente sostiene que en los méritos no adeuda la deficiencia en cuestión.(7)

_____

(7) En el párrafo 9(b) de la querella, después de alegar el recibo de la primera deficiencia, Irizarry sostiene que durante la vista administrativa de la misma "se justificó por el contribuyente la procedencia del dinero que se le imputaba como beneficio del negocio de bolita . . .", y que el Tesorero notificó la segunda deficiencia de $9,368.11 no obstante el hecho de que "en dicha vista administrativa el contribuyente había probado hasta la saciedad el origen de todos y cada uno de los fondos depositados por él en bancos durante el año 1939." Esta última alegación está repetida en el párrafo (d) al atacarse la penalidad impuesta por fraude.

El párrafo 9(h) de la querella lee como sigue: "Que los depósitos en bancos hechos por el querellante durante el año 1939 y que figuraban como haber en su cuenta, procedían parte que fueron arrastrados de su cuenta corriente del año anterior 1938 y el resto de ingresos procedentes de sus negocios de automóviles de alquiler, vaquería; compraventa de ganado para matanza; compraventa de frutos del país y ventas de casas, préstamos e hipotecas."

El párrafo 9(i) alega "Que el único banco en que el contribuyente hizo depósitos durante el expresado año 1939, fué el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez . . .". Entonces dicho párrafo explica en detalle los balances en esta cuenta al finalizar cada mes de 1939. Concluye alegando que "Entre la suma de $4,790.22 que se arrastró de dicha cuenta del año 1938 hasta la suma del saldo mayor de la misma en mayo de 1939, de $17,534.30, existe una diferencia de $12,744.08", y que "La curva que representan los depósitos y los desembolsos en dicha cuenta, claramente representan las operaciones de un hombre de negocios, que es lo que el contribuyente ha sido durante toda su vida."

El Tesorero trata de controvertir este punto afirmando que la resolución del Tribunal de Contribuciones equivalía a una decisión al efecto de que la querella no aducía hechos suficientes constitutivos de una causa de acción. Pero si éste fuera el alcance de la resolución del Tribunal de Contribuciones, necesariamente dicho tribunal le hubiera concedido a Irizarry permiso para enmendar. Por el contrario, el Tribunal de Contribuciones erróneamente afirmó que Irizarry en su querella se limitó a impugnar la autoridad del Tesorero para hacer una tasación de emergencia y no discutía la deficiencia en sus méritos. Al dictar resolución final en favor del Tesorero, dicho Tribunal erró precisamente porque le cerró las puertas al contribuyente para poder probar la contención alegada en su querella, contra los méritos de la tasación de emergencia.

*La resolución del Tribunal de Contribuciones será revocada y el caso devuelto para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Negrón Fernández se inhibió.