FRANCISCO VICENTY, demandante y apelado, *v.* CORONA BREWING CORPORATION, demandada y apelante.

Núm. 10269.—*Sometido:* Noviembre 5, 1951. *Resuelto:* Febrero 14, 1952

R. *Rodríguez Lebrón,* abogado de la apelante; *Joaquín Gallart Mendía,* abogado del Departamento del Trabajo y a su vez del apelado.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del tribunal.

Francisco Vicenty reclamó de la Corona Brewing Corporation la suma de $1,231.09 en concepto de salarios dejados de percibir por novenas horas trabajadas desde el 7 de noviembre de 1935, fecha en que empezó a regir la Ley núm. 49 aprobada el 7 de agosto de 1935 ((2) pág. 539), hasta el 12 de marzo de 1944, fecha en que comenzó a regir el Decreto Mandatorio núm. 5 de la Junta de Salario Mínimo, reglamentando la industria cervecera y de gaseosas. Alegó en su querella que durante dicho término trabajó doce horas diarias durante 2,863 días, a base de un salario promedio mensual de $154.33, o sea $5.14 al día, y habiendo trabajado doce horas diarias su salario por hora resultaba ser el de cuarenta y tres centavos ($.43); que no habiéndole pagado la querellada las novenas horas a tipo doble según lo dispone la Ley núm. 49 de 1935, y sí a tipo sencillo, la querellada le adeudaba la suma antes mencionada.

La querellada en su contestación aceptó algunos hechos y negó otros y como defensas especiales alegó que el querellante estaba exento de las disposiciones de la Ley núm. 49 de 1935 por ser un patrono dentro del significado que el término tiene en dicha ley y que la causa de acción del querellante estaba prescrita. También formuló la querellada una reconvención contra el querellante reclamándole la suma de $81,738.57 por alegados daños y perjuicios sufridos por la querellada debido a la negligencia, incompetencia y des-

cuido del querellante en el desempeño de sus funciones como maestro cervecero.

Celebrada la vista correspondiente el tribunal inferior declaró sin lugar la reconvención de la querellada y con lugar la querella, condenando a la querellada a pagar al querellante la suma de $965.55 por concepto de salarios adeudados correspondientes a 2,355 novenas horas. No conforme la querellada apeló y en este recurso sostiene que el tribunal a quo erró: (1) al resolver que el querellante estaba cubierto por la Ley núm. 49 de 1935; (2) al no permitir prueba sobre nuevos arreglos habidos entre apelante y apelado o cambios sustanciales en las condiciones de empleo del apelado ocurridos después del año 1944 a los efectos del cómputo del período prescriptivo, y (3) al resolver que el querellante trabajó un promedio de doce horas diarias y al concederle la suma de $965.55 como compensación.

■■ Al discutir el primer error la apelante sostiene que el querellante, de acuerdo con la prueba, cualifica como un representante del patrono y por tanto está excluído de los beneficios de la Ley núm. 49 de 1935. Trata de distinguir el presente caso entonces del de *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269. No tiene razón. En el caso de *Chabrán* resolvimos que por la disposición de la sección 4 de la Ley núm. 49 de 1935 al efecto de que " 'patrono' incluye toda persona natural o jurídica y el administrador, superintendente, capataz, mayordomo y representante de dicha persona natural o jurídica", la legislatura no eximió a los representantes del patrono, como empleados, de las disposiciones de dicha ley. Resolvimos además en dicho caso que la palabra "patrono" se definió en la sección 4 para que incluya a los representantes del patrono de suerte que fuese más difícil a los patronos evadir la ley pero que tal representante, en lo que concierne a sus propios intereses, es un empleado frente al dueño del establecimiento que es el verdadero patrono. Dijimos, por último, en cuanto a esta cuestión, que "Es obvio que según aparece la palabra en dicha sección un representante no

es un empleado que desempeña labor manual u oficinesca rutinaria. Más bien es un individuo que actúa y habla por el patrono sobre cuestiones que requieren el uso de discreción. Por ejemplo, un empleado que tiene otros empleados trabajando bajo sus órdenes y a quienes puede contratar y despedir, probablemente caería en esta categoría." Al mismo efecto véanse *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267 y *Correa* v. *Mario Mercado e Hijos*, 72 D.P.R. 80.

La prueba en el presente caso demostró que el querellante estuvo trabajando como ayudante del maestro cervecero de la querellada durante el período comprendido en su reclamación, o sea desde el 7 de noviembre de 1935 hasta el 12 de marzo de 1944. Sus labores consistían: (*a*) bajo las órdenes del maestro cervecero, atender desde su principio hasta el final la elaboración de la cerveza, para lo cual se tenía que trasladar a distintas dependencias de la cervecería para tomar muestras del producto; (*b*) vigilar e inspeccionar constantemente los tanques y su presión, para lo cual tenía obreros que le ayudaban; (*c*) a veces asumía las labores y responsabilidades del maestro cervecero pero siempre bajo la supervisión de éste. En su empleo, el apelado no tenía hora fija de entrada al trabajo y como ayudante del maestro cervecero no podía nombrar o despedir empleados ni fijarles salarios o turnos de trabajo, siendo esas facultades de la administración de la apelante. Se probó además que si bien en el año 1940 la apelante envió al apelado a estudiar a la Academia de Cerveceros de Nueva York donde se graduó de cervecero, a su regreso continuó como ayudante del maestro cervecero con las mismas obligaciones que tenía antes.

No erró a nuestro juicio la corte a quo al resolver que la Ley núm. 49 de 1935 era aplicable al apelado. La labor que éste desempeñaba como auxiliar del maestro cervecero no le hizo perder su *status* de empleado para convertirse en un representante del patrono. La doctrina establecida en los casos de *Chabrán* v. *Bull Insular Line* y *Tulier* v. *Autoridad de Tierras*, supra, es aplicable al presente.

██ ██ En el segundo señalamiento se sostiene que erró el tribunal a quo al no permitir a la apelante presentar prueba sobre nuevos arreglos habidos entre el apelado y la apelante o sobre cambios sustanciales en las condiciones de empleo del apelado ocurridos después del año 1944 a los efectos del cómputo del término prescriptivo de la acción.

Como hemos dicho, el apelado limitó su reclamación al período comprendido entre el 7 de noviembre de 1935 y el 12 de marzo de 1944. Cesó en su empleo el 12 de marzo de 1948 y radicó su querella en este caso el 4 de octubre de 1948. Citando el inciso 3 del artículo 1867 del Código Civil, ed. de 1930,(¹) la querellada, entre sus defensas especiales, alegó que la causa de acción del querellante estaba prescrita en cuanto a trabajo realizado con anterioridad, entre otros, al año 1945, por haber ocurrido cambios en su compensación.

El incidente que da lugar a este señalamiento surgió mientras declaraba el testigo Antonio Escudero, gerente de la querellada, en esta forma:

"P. ¿Usted recuerda cuáles eran esas funciones adicionales, si lo recuerda?

"R. Bueno, él era el que realmente estaba llevando la dirección del departamento en cuanto a la asignación de trabajo al personal, la asignación de turnos, la supervisión más o menos inmediata en cuanto a los materiales, etc.... todos los problemas nosotros a quien llamábamos para consultarlos y discutirlos era al señor Vicenty y no el señor Groneau.

"P. ¿Posteriormente a eso, ocurrió algún otro cambio?

"R. Sí, entonces en el año 1945 . . .

---

(¹) El artículo 1867, inciso 3, y su último párrafo, disponen:

"Artículo 1867.—Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

".   .   .   .   .   .   .   .   .

."3. La de pagar los menestrales, criados y jornaleros el importe de sus servicios, y de los suministros o desembolsos que hubiesen hecho, concernientes a los mismos.

"4. .   .   .   .   .   .   .

"El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará desde que dejaron de prestarse los respectivos servicios."

"*Sr. Gallart:* Objeción a que se diga qué cambio ha ocurrido en el 1945, porque la querella comprende hasta el año 1944.

"*La Corte:* El año 1944 cubre.

"*Sr. Rodríguez Lebrón:* El hecho de que la querella se limite al año 1944 no nos impide levantar cualquier cambio en las condiciones del trabajo, a los efectos de sostener nuestra defensa de prescripción, que está predicada en que si ocurrió algún cambio fundamental en las funciones de él, y en los deberes y obligaciones, y si transcurrieron tres años de ese cambio, entonces lo que está reclamando el demandante por años anteriores está prescrita la acción.

"*Sr. Gallart:* Yo no veo cómo puede el compañero confundir una cosa con la otra. Si ocurrieron cambios en la naturaleza del trabajo del causante, tienen que ser cambios ocurridos dentro del tiempo de la querella.

*La Corte:* Con lugar la objeción.

*Sr. Rodríguez Lebrón:* Excepción.

"P. ¿Hasta qué fecha estuvo trabajando con ustedes Vicenty?

"R. Hasta marzo 12, 1948.

"*Sr. Rodríguez Lebrón:* Con la venia del tribunal, a los efectos del récord, en caso de permitirse al testigo declarar sobre estos extremos, que nosotros pedimos, que son perfectamente admisibles, a pesar de que se haya limitado la reclamación hasta el año 1944, la prueba demostraría que en el año 1945 ocurrió otro cambio sustancial en los deberes del señor Vicenty, así como . . .

"*La Corte:* El taquígrafo tomará eso dentro del propio récord, a los fines de cualquier posterior procedimiento en una corte superior de apelación, que se entienda es lo que declararía el testigo de haberse permitido su testimonio alrededor de aquellas cuestiones que se ha declarado con lugar la objeción.

"*Sr. Rodríguez Lebrón:* Así como también en su compensación y en general un cambio en cuanto a sus condiciones y términos de empleo."

El error apuntado debe resolverse tomando en consideración la Regla 43 (*c*) en relación con la Regla 61 de las de Enjuiciamiento Civil. (²)  Nuestra Regla 43 (*c*) se diferencia

---

(²) La Regla 43 (*c*) dispone:

"Regla 43.—Evidencia.

".

de su concordante en número de las Reglas Federales en que al adoptarla aquí se suprimió aquella parte que se refiere a acciones vistas ante un jurado. Al efecto la Regla 43 (c) federal dispone lo siguiente:

"En una acción juzgada por un jurado, si se sostuviere por la corte una objeción a una pregunta formulada a un testigo, el abogado que lo interroga puede hacer un ofrecimiento específico de lo que se propone probar con la contestación del testigo. La corte puede requerir que la oferta se haga en ausencia del jurado. La corte puede agregar cualquier manifestación adicional que demuestre claramente el carácter de la evidencia, la forma en que se ofreció, la objeción hecha y la resolución sobre la misma. En acciones juzgadas sin jurado *el mismo procedimiento puede seguirse* excepto que la corte si se le solicita ordenará que se tome la evidencia completa, a menos que claramente aparezca que la evidencia es inadmisible por cualquier razón o que se trata de un testigo privilegiado." (Bastardillas nuestras.)

Como puede verse el abogado de la recurrente en el presente caso siguió más bien el procedimiento provisto por la regla federal para casos vistos ante un jurado, es decir, hacer constar en récord lo que se proponía probar con el testigo Escudero. En cuanto a esta parte de la regla federal, se ha resuelto que el dejar de hacer un ofrecimiento for-

---

"(c) *Récord de Evidencia Excluída.*—En cualquier acción, si se sostuviere por la corte una objeción a una pregunta formulada a un testigo, el abogado que lo interroga *puede* solicitar y la corte ordenará que se haga un récord completo de la evidencia que trate de elucidarse por medio de dicha pregunta objetada, a menos que claramente aparezca que la evidencia es inadmisible por cualquier razón o que se trata de un testigo privilegiado." (Bastardillas nuestras.)

Y la Regla 61 dispone:

"Regla 61.—Errores no Perjudiciales.

"Ningún error en la admisión o exclusión de evidencia y ningún error o defecto en cualquier decisión u orden, o en cualquier acto realizado u omitido por la corte o por cualquiera de las partes, dará lugar a la concesión de un nuevo juicio, o a dejar sin efecto, modificar, o de otro modo alterar una sentencia u orden, a menos que la corte considere que la negativa a tomar tal acción sea inconsistente con la justicia substancial. En el curso de todo el procedimiento la corte deberá hacer caso omiso de cualquier error o defecto en el mismo que no afecte los derechos substanciales de las partes."

mal de lo que la parte se proponía probar con el testigo no impide que el error cometido, al no admitirse la pregunta, prospere en apelación. *Meaney* v. *United States*, 112 F.2d 538 (C.C.A. 2, 1940); *Maguire* v. *Federal Crop Ins. Corp.*, 181 F.2d 320 (C. A. 5, 1950); 5 Moore's *Federal Practice*, sec. 43.11, pág. 1351. Empero, si el alcance de la prueba excluída no es patente o no aparece qué es lo que hubiera declarado el testigo, debe hacerse constar en qué consistiría la prueba para que la cuestión pueda tener éxito en apelación. *Hoffman* v. *Palmer*, 129 F.2d 976 (C. C. A. 2, 1942); *Sorrels* v. *Alexander*, 142 F.2d 769 (C. A. D. C., 1944); 5 Moore, ob. cit., id.

En cuanto a los juicios celebrados sin jurado, como sucede en Puerto Rico, Moore, al comentar la regla federal, dice lo siguiente:

"Aquí el alcance de la regla indica que generalmente la corte inferior tomará toda la prueba que no sea claramente inadmisible o privilegiada, de manera que la corte de apelación, si no está de acuerdo con las conclusiones de la corte inferior, pueda rendir la sentencia que proceda y no esté obligada a devolver el caso para un nuevo juicio. Si aparece prueba en el récord la corte de apelación tiene derecho a considerarla, si legítima, aun cuando la corte de distrito la hubiera excluído para el propósito que se ofreció." Ob. cit., pág. 1352. *F. H. McGraw & Co.* v. *Milcor Steel Co.*, 149 F. 2d 301 (C. C. A. 2, 1945).

Ahora bien, al eliminar este Tribunal la primera parte de la Regla 43 (c) federal cuando aprobó la Regla 43 (c) aquí vigente, fué inducido por el hecho de que aquélla se refería a juicios celebrados ante jurado, situación que no existe en Puerto Rico en casos civiles. Esa eliminación no implica que no pueda continuar subsistiendo la práctica reconocida por nuestra jurisprudencia relacionada con el ofrecimiento de lo que se intentaba probar con el testigo cuando se sostiene por la corte una objeción a una pregunta y que, de no hacerse dicho ofrecimiento, la resolución de la corte

pueda sostenerse por ese fundamento. *Romañat* v. *White Star Bus Line, Inc.*, 43 D.P.R. 939, en donde resolvimos, citando del sumario 7, que: "Cuando al objetarse a que un testigo perito declare, la parte que lo presenta no hace constar claramente mediante una oferta específica lo que con él intenta probar, la resolución de la corte sosteniendo la objeción puede ser sostenida sólo por ese fundamento." La misma regla hemos aplicado en casos criminales. *El Pueblo* v. *Diodonet*, 22 D.P.R. 751; *Pueblo* v. *Gelpí*, 55 D.P.R. 750.

En el presente caso, si bien el ofrecimiento que hizo el abogado de la querellada de lo que se proponía probar con el testigo Escudero no es todo lo amplio y detallado que pudo ser, esto posiblemente se debió al hecho de haber sido interrumpido por la corte cuando estaba comenzando a hacerlo. constar en el récord. Deseamos advertir, para futuros casos, que en situaciones como éstas el abogado debe hacer constar en récord, con toda la amplitud posible, lo que el testigo, a quien no se ha permitido contestar, hubiera declarado, con el fin de que este Tribunal pueda determinar si la prueba, de haber sido creída por la corte inferior, hubiera justificado un resultado distinto en el caso. O puede, ajustándose a la Regla 43 (c), supra, obtener que se haga un récord completo de la evidencia que trata de elucidarse por medio de la pregunta objetada.

En relación con esta cuestión sobre la admisión de prueba por las cortes de primera instancia, nos parece conveniente citar la sugestión hecha por el Juez Learned Hand a las cortes de distrito federales al efecto de que ". . . la tendencia de rechazar prueba porque ofende algún canon de la ley de evidencia debe ser desalentada; su admisión rara vez causa daño alguno, mientras que su exclusión muchas veces demuestra ser extremadamente embarazosa para sostener una sentencia fundamentalmente justa." *United States* v. *White*, 124 F.2d 181, 186 (C. C. A. 2, 1941). Y véase la opinión disidente del Juez Clark en *Hoffman* v. *Palmer*, supra, págs. 998, 1002.

¿Era inadmisible la pregunta formulada al testigo Escudero? Veamos.

Interpretando el alcance del inciso 3 del artículo 1867 del Código Civil, supra, hemos resuelto que el término de tres años que el mismo provee debe contarse desde la fecha en que dejaron de prestarse los respectivos servicios, siendo uno de los casos en que así ocurre, según dijimos en *Muñoz v. Corte*, 63 D.P.R. 236, 248, cuando "al variar la naturaleza de los servicios que venía prestando el obrero, se operaba una novación que extinguía el contrato anterior para dar paso a un nuevo contrato . . . de suerte que el período prescriptivo se contase a partir de la terminación de cada contrato sin tener en cuenta que el obrero continuase al servicio del mismo patrono." Al mismo efecto véanse *Avellanet v. Porto Rican Express Co.*, 64 D.P.R. 693; *Jiménez v. Corte*, 65 D.P.R. 37; *Valiente & Cía. v. Corte*, 68 D.P.R. 529; *Chabrán v. Bull Insular Line*, supra.

El hecho de que el querellante en este caso pusiera como límite de su reclamación el año 1944 y que él declarara que hasta el año 1947, en que fué nombrado maestro cervecero en sustitución del Sr. Groneau, siempre realizó la misma labor y que no hubo cambio alguno en su contrato (a pesar de los distintos cambios en su compensación) no era motivo para impedir que la querellada, en apoyo de su defensa de prescripción, presentara la prueba que según anunció, demostraría que habían ocurrido cambios sustanciales en las condiciones del empleo del querellante. Es más, si de acuerdo con la novena conclusión de hecho a que llegó el tribunal inferior, al efecto de que "a partir del 1943 y hasta el 12 de marzo de 1944, el querellante recibió un aumento considerable en su salario, en contemplación a sus aumentadas obligaciones como ayudante del químico cervecero", la querellada tenía derecho a demostrar, si podía, que no fueron únicamente "aumentadas obligaciones" las que se impusieron al apelado durante dichos años sino que en el año 1945 pudo haber ocurrido un cambio tan sustancial en sus obligaciones que constituyera

un nuevo contrato y, como consecuencia, que diera comienzo en dicha fecha el período prescriptivo de tres años.

El hecho de que el título del cargo que desempeñaba el querellante fuera el de "ayudante del maestro cervecero" y que como cuestión de hecho no pasó a ocupar el cargo de maestro cervecero hasta el año 1947, no implica, como arguye el apelado, que no pudieron haber ocurrido cambios sustanciales en su labor, compensación, etc., que dieran lugar a un nuevo contrato.

El segundo error fué cometido, fué perjudicial para la querellada y conlleva *la revocación de la sentencia y la devolución del caso para la celebración de un nuevo juicio.*